JUSTIN L. THOMAS, ESQ. (SBN 288590)
ZIMMER & MELTON, LLP
11601 Bolthouse Drive, Suite 100
Bakersfield, CA 93311-8714
Telephone (661) 463-6700
Facsimile (661) 501-4221
email: jthomas@zimmermelton.com

Attorneys for MEC, INC. dba MEC ENVIRONMENTAL, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of MEC, INC., an Ohio corporation, dba MEC ENVIRONMENTAL, INC.<br><br>Plaintiff,<br><br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; and KORTE CONSTRUCTION COMPANY D/B/A THE KORTE COMPANY, a Missouri corporation,<br><br>Defendants. | **CASE NO.**<br><br>**COMPLAINT FOR RECOVERY ON MILLER ACT PAYMENT BOND (40 U.S.C. §3133); BREACH OF CONTRACT; COMMON COUNTS; AND DEMAND FOR JURY TRIAL** |

Use-Plaintiff complains and alleges:

**JURISDICTION AND VENUE**

1. This action is brought under and jurisdiction is conferred by Title 40, United States Code, §§3131–3134.

2. Venue is proper in this District under 40 U.S.C. §3133(b)(3)(B) because the Prime Contract and the Subcontract described below were to be performed, and were performed, at Edwards Air Force Base, County of Kern, State of California, which is within the Eastern District of California.

///

## PARTIES

3. At all times relevant herein MEC, Inc., dba MEC Environmental, Inc. (hereinafter "MEC"), was and is a corporation duly organized and existing under the laws of the State of Ohio, qualified with the California Secretary of State to transact intrastate business in the State of California under the name MEC Environmental, Inc., licensed as a contractor in the state of California (Contractors License No. 682343), with offices at 4919 Contractor Road, Trailer M, Edwards Air Force Base, California 93523, and doing business in the County of Kern, State of California.

4. At all times relevant herein Defendant Travelers Casualty and Surety Company of America (hereinafter "Travelers") was and now is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business at One Tower Square, Hartford, Connecticut 06183, and authorized and licensed to do business and is doing business in the State of California as a surety issuing bonds required by law or contract by the United States and various agencies within the jurisdiction of this Court.

5. Use-Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant Korte Construction Company, dba The Korte Company (hereinafter "Korte"), was and now is a corporation, duly organized and existing under the laws of the State of Missouri, with offices at 5700 Oakland Avenue, Suite 275, St. Louis, Missouri 63110, and at all relevant times was performing work at Edwards Air Force Base, County of Kern, State of California.

## FIRST CAUSE OF ACTION

### (Claim on "Miller Act" Payment Bond — Against All Defendants)

6. Use-Plaintiff incorporates paragraphs 1 through 5 as though fully set forth herein.

7. Defendant Korte, as a contractor, entered into a written contract with the United States of America, by and through the Department of the Army, U.S. Army Corps of Engineers, Los Angeles District, Contract No. W912PL21C0028, dated September 28, 2021 (hereinafter "Prime Contract"), by the terms of which Korte agreed to construct a public work of improvement known as the Design-Build Flight Test Engineering Laboratory Complex, including the demolition and abatement of Building 1400 (Option 6, CLIN 0009), at 54 North Wolfe Avenue, Edwards Air Force Base, California 93524 (hereinafter "Project").

8. Use-Plaintiff is informed and believes and thereon alleges that under 40 USC §§3131–3134, Defendant Korte, as principal, and Defendant Travelers, as surety, executed and delivered a payment bond to the United States, Payment Bond No. 107512577, executed October 4, 2021, in the penal sum of $36,405,855.00, whereby said Defendants bound themselves jointly and severally for the purpose of allowing a joint action or actions against any or all of them and bound themselves in a sum of money equal to the contract price. A true and correct copy of the payment bond is attached hereto as Exhibit A.

9. Thereafter, on or about October 2, 2024, Defendant Korte entered into a written subcontract with MEC, Subcontract No. 21217 / TKC 45659, to perform certain work on said Project, consisting of the demolition and abatement of Building 1400 (hereinafter, the "Subcontract"). A true and correct copy of the Subcontract between MEC and Korte is attached hereto as Exhibit B and incorporated herein by this reference.

10. Between February 17, 2025, and September 18, 2025, Use-Plaintiff furnished labor, material, services, and equipment (hereinafter "Work"), under the written Subcontract between Use-Plaintiff and Defendant Korte and at the specific request of Korte, in the execution of the requirements of the Prime Contract between Korte and the United States.

11. Under said contract, Korte agreed to pay Use-Plaintiff the base contract amount of $1,351,666.24, plus additional amounts for changes in the Work ordered by Korte under Article 6 of the Subcontract, claims, and change orders for said Work, which totaled $655,862.96, for a total contract price of $2,007,529.20 for said Work.

12. During performance of the Subcontract, Korte ordered and directed MEC to perform additional and changed Work within the general scope of the Subcontract, and MEC performed that Work as part of the Work under the Subcontract, including the work described in MEC's Change Order Request Nos. 3, 4 and 5 (hereinafter "COR 3," "COR 4," and "COR 5"). True and correct copies of COR 3, COR 4, and COR 5 are attached hereto as Exhibit C and incorporated herein by this reference.

13. Korte accepted MEC's additional Work.

/ / /

/ / /

14. Use-Plaintiff has fully and completely performed all promises on Use-Plaintiff's part to be performed under its contract with Korte and under the bond, and all conditions precedent to the obligation of Defendants, and each of them, to perform have been satisfied.

15. Of the total contract price of $2,007,529.20 for Work furnished by Use-Plaintiff to Korte, only the sum of $1,523,373.45 has been paid, leaving a balance of $484,155.75 remaining due, owing, and unpaid to Use-Plaintiff, consisting of $473,966.75 on account of COR 3 and COR 4 and $10,189.00 on account of COR 5.

16. Use-Plaintiff last furnished Work on the Project within the year immediately preceding the date this complaint was filed.

17. A period of 90 days has now elapsed since Use-Plaintiff last provided Work to Korte.

18. MEC has a direct contractual relationship with Korte, the contractor that furnished the payment bond, and no notice under 40 U.S.C. §3133(b)(2) is required. Any further notice from MEC regarding its claim is excused by the relationship between MEC and Korte, the prime contractor for the Project.

19. Under the payment bond executed between Defendants Korte and Travelers, Defendant Travelers is jointly and severally obligated to provide payment to Use-Plaintiff for Work provided to the Project. Accordingly, on the failure of Korte to compensate Use-Plaintiff for Work provided, Defendant Travelers is obligated to pay Use-Plaintiff the amount set forth above. The Subcontract provides that should either party employ an attorney to institute suit to enforce any of its provisions, to collect damages for its breach, or to recover on a surety bond, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses.

20. Under Section 5.5 of the Subcontract, progress payments or final payment due and unpaid bear interest from the day after the required payment date until the date on which payment of the amount due is made, computed on the basis of the Federal Cost of Money Rate (31 U.S.C. §3902(a)). Alternatively, MEC is entitled to prejudgment interest on the sums due at the legal rate under California law.

///

///

**SECOND CAUSE OF ACTION**

**(Breach of Contract — Against Defendant Korte)**

21. Use-Plaintiff incorporates paragraphs 1 through 20 as though fully set forth herein.

22. Beginning in or about October 2025 and continuing to the present, Defendant Korte materially breached the Subcontract by failing to fully pay MEC for the abatement, demolition, and related goods and services it provided to the Project pursuant to the Subcontract, including the additional Work ordered by Korte and described in COR 3, COR 4, and COR 5, and by failing to pay interest on late payments as required by Section 5.5 of the Subcontract. MEC is informed, believes, and thereon alleges that Korte still owes MEC at least $484,155.75 for the value of its goods and services furnished to the Project.

23. MEC has made repeated demands to Korte for payment of the $484,155.75 plus interest due to it under the Subcontract. However, Korte has failed, and continues to fail, to comply with those demands.

24. As a direct and proximate result of Korte's breach of the Subcontract, MEC has been damaged in the sum of at least $484,155.75, plus interest thereon at the legal rate of ten percent (10%) per annum from and after October 2025 (subject to proof at trial), or, alternatively, at the rate provided in Section 5.5 of the Subcontract.

25. As a further direct and proximate result of the breaches of the Subcontract by Korte, MEC has been required to retain attorneys to provide representation, and incurred legal fees and costs to protect its interests under the Subcontract in an amount to be determined at or before trial. Section 15.4 of the Subcontract provides that the prevailing party in any suit to enforce its provisions or to collect damages for its breach shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses. Therefore, MEC seeks to recover from Korte the attorneys' fees, costs and expenses it incurs in connection with its efforts to enforce the Subcontract, in an amount subject to proof at trial, pursuant to the Subcontract and California Civil Code §1717.

26. MEC is informed, believes and thereon alleges that there is not a good faith dispute over all or any portion of the amount due.

///

**THIRD CAUSE OF ACTION**

**(Common Count — Open Book Account — Against Defendant Korte)**

27. Use-Plaintiff incorporates paragraphs 1 through 20 as though fully set forth herein.

28. From about February 17, 2025 through September 18, 2025, Korte became indebted to MEC upon an open book account and otherwise for abatement, demolition, and related goods and services provided to Korte for the Project, at Korte's special instance and request, for which Korte agreed to pay a sum for such goods and services, of which $484,155.75 remains unpaid.

29. Despite demand having been made, the balance has not been paid by Korte to MEC. The amount of $484,155.75 remains due, owing and unpaid from Korte to MEC plus interest thereon at the legal rate of ten percent (10%) per annum from and after October 2025 (subject to proof at trial).

30. As a further direct and proximate result of the breaches, MEC has been required to retain attorneys to provide representation, and incurred legal fees and costs to protect its interests and is entitled to recover attorneys' fees pursuant to Civil Code § 1717.5 and Section 15.4 of the Subcontract.

**DEMAND FOR JURY TRIAL**

Use-Plaintiff hereby demands trial of this matter by jury.

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America, for the use and benefit of Use-Plaintiff MEC, Inc. dba MEC Environmental, Inc., prays for judgment against Defendants, and each of them, as follows:

**On the First Cause of Action:**

1. For the sum of $484,155.75, and such additional sums that become due up to the date of trial, according to proof;
2. For interest on said sum at the legal rate per annum from October 2025, through the date of judgment, or, alternatively, at the rate provided in Section 5.5 of the Subcontract;
3. For reasonable attorney's fees under Section 15.4 of the Subcontract and California Civil Code §1717;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems proper.

/ / /

**On the Second Cause of Action:**

1. For compensatory damages in the sum of at least $484,155.75;
2. For interest at the legal rate of ten percent (10%) per annum from October 2025 (subject to proof at trial), or, alternatively, at the rate provided in Section 5.5 of the Subcontract;
3. For attorney's fees pursuant to the Subcontract and California Civil Code §1717; and
4. For costs of suit herein incurred.

**On the Third Cause of Action:**

1. For the sum of at least $484,155.75;
2. For interest at the legal rate of ten percent (10%) per annum;
3. For costs of suit herein incurred;
4. For reasonable attorney's fees pursuant to Civil Code § 1717.5 and the Subcontract; and

**On All Causes of Action:**

1. For such other and further relief as the Court deems proper.

Dated: September 16, 2026

ZIMMER & MELTON, LLP

By: ______________________

JUSTIN L. THOMAS
Attorneys for Use-Plaintiff MEC, Inc. dba MEC Environmental, Inc.

**Exhibit A**

Payment Bond No. 107512577

Bond No. 107512577

| **PAYMENT BOND**<br>*(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br>October 4, 2021 | **OMB Control Number: 9000-0045**<br>**Expiration Date: 8/31/2022** |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 1 hour to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* |
|---|---|
| Korte Construction Company D/B/A The Korte Company<br>5700 Oakland Avenue, Suite 275<br>St. Louis, MO 63110 | ☐ INDIVIDUAL ☐ PARTNERSHIP ☐ JOINT VENTURE<br>☒ CORPORATION ☐ OTHER *(Specify)*<br>STATE OF INCORPORATION: Missouri |

| SURETY(IES) *(Name(s) and business address(es))* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| Travelers Casualty and Surety Company of America<br>One Tower Square<br>Hartford, CT 06183 | 36 | 405 | 855 | 00 |
| | CONTRACT DATE: **September 28, 2021** | | CONTRACT NUMBER: **W912PL21C0028** **Flight Test Engineering Laboratory Complex at Edwards Air Force Base, Kern County, CA** | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**: Korte Construction Company D/B/A The Korte Company

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. [signature] (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Susan D. Bowman<br>Secr./Treasurer/CFO | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) *(Typed)* | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | Travelers Casualty and Surety Company of America<br>One Tower Square, Hartford, CT 06183 | STATE OF INCORPORATION: Connecticut | LIABILITY LIMIT: $209,103,000.00 | Corporate Seal |
| SIGNATURE(S) | 1. [signature] | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. Andrew P. Thome,<br>Attorney-in-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
*Previous edition is NOT usable*

**STANDARD FORM 25A (REV. 8/2016)**
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

**CORPORATE SURETY(IES)** *(Continued)*

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed

(b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

(c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

State of ~~California~~ Missouri

County of **St. Louis**

On **October 4, 2021** before me, **Amanda L. Williams, Notary Public**,
(Here insert name and title of the officer)

personally appeared **Andrew P. Thome, Attorney-in-Fact**,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Amanda L. Williams

Signature of Notary Public **Amanda L. Williams, Notary Public** (Notary Seal)

AMANDA L. WILLIAMS
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
COMMISSIONED FOR ST. LOUIS COUNTY
MY COMMISSION EXPIRES JUL. 24, 2025
ID #13507257

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

Government Performance & Payment Bond
(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages 4 Document Date October 4, 2021

**Travelers Casualty and Surety Company of America**
(Additional information)

CAPACITY CLAIMED BY THE SIGNER

- ☐ Individual (s)
- ☐ Corporate Officer

  (Title)
- ☐ Partner(s)
- ☒ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other

INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. ~~he~~/she/~~they,~~ is /~~are~~ ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - Indicate title or type of attached document, number of pages and date.
  - Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

State of **Missouri**
County of **St. Louis**

On **10/04/2021**, before me, a Notary Public in and for said County and State, residing therein, duly commissioned and sworn, personally appeared **Andrew P. Thome** known to me to be Attorney-in-Fact of

## TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

the corporation described in and that executed the within and foregoing instrument, and known to me to be the person who executed the said instrument in behalf of said corporation, and he duly acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day and year stated in this certificate above.

Amanda L. Williams

Amanda L. Williams, Notary Public

AMANDA L. WILLIAMS
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
COMMISSIONED FOR ST. LOUIS COUNTY
MY COMMISSION EXPIRES JUL. 24, 2025
ID #13507257

My Commission Expires: ______________________

TRAVELERS

**Travelers Casualty and Surety Company of America**
**Travelers Casualty and Surety Company**
**St. Paul Fire and Marine Insurance Company**

## POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS**: That Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company are corporations duly organized under the laws of the State of Connecticut (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint **ANDREW P THOME** of **CHESTERFIELD** , **Missouri** , their true and lawful Attorney(s)-in-Fact to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed, and their corporate seals to be hereto affixed, this **21st** day of **April**, **2021**.

State of Connecticut

City of Hartford ss.

By: [signature]
Robert L. Raney, Senior Vice President

On this the **21st** day of **April**, **2021**, before me personally appeared **Robert L. Raney**, who acknowledged himself to be the Senior Vice President of each of the Companies, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of said Companies by himself as a duly authorized officer.

**IN WITNESS WHEREOF**, I hereunto set my hand and official seal.

My Commission expires the **30th** day of **June, 2026**

[signature]
Anna P. Nowik, Notary Public

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of each of the Companies, which resolutions are now in full force and effect, reading as follows:

**RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED**, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED**, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

I, **Kevin E. Hughes**, the undersigned, Assistant Secretary of each of the Companies, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which remains in full force and effect.

Dated this **4** day of **October** , **2021** .

[signature]
Kevin E. Hughes, Assistant Secretary

***To verify the authenticity of this Power of Attorney, please call us at 1-800-421-3880.***
***Please refer to the above-named Attorney(s)-in-Fact and the details of the bond to which this Power of Attorney is attached.***

**Exhibit B**

Subcontract No. 21217 / TKC 45659 dated October 2, 2024

# SUBCONTRACT COVER PAGE

<table>
<tr><td colspan="4">CONTRACTOR'S USE ONLY</td><td rowspan="3">CONTRACTOR'S PROJECT #:21217</td><td>SUBCONTRACT #</td><td>21217 TKC 45659</td></tr>
<tr><td>Phase Code</td><td colspan="3">Initial Out</td><td colspan="2">Important: This number must appear on all invoices and all correspondence.</td></tr>
<tr><td>024102-00999</td><td>RB</td><td>AF</td><td>AR/ EK</td><td colspan="2">Contract Date: 10/02/2024</td></tr>
<tr><td colspan="4">SUBCONTRACTOR'S WORK TO BEGIN APPROXIMATELY: 11/1/2024</td><td colspan="3">CATALOG CUTS/SHOP DRAWINGS BY: 11/1/2024<br>Electronically via Procore</td></tr>
<tr><td colspan="4">SUBCONTRACTOR'S WORK SHALL BE COMPLETED ON OR BEFORE: 1/30/2025</td><td colspan="3" rowspan="3">SAMPLES BY:<br>N/A</td></tr>
<tr><td colspan="4">CERTIFICATE OF INSURANCE REQUIRED: X</td></tr>
<tr><td colspan="4">Design Build: Designer Addendum:</td></tr>
<tr><td colspan="4">Green Building Requirements: GPV<br>Version GPC Goal/Required: requirement<br>Level: Compliant</td><td colspan="3">SUBCONTRACTOR:<br>Contact: Anthony Aguilar Phone: 661-258-8060<br>Email: anthony@mec-inc.com</td></tr>
<tr><td colspan="4">Validation: US Green Building Initiative (GBI) and the Green Building Certification Institute (GBCI)</td><td colspan="3">Bond Required: No Electronic Certified Payroll: X</td></tr>
</table>

## SUBCONTRACT FOR USE ON FEDERAL CONSTRUCTION 1991 EDITION

FROM: The Korte Company
12441 U.S. Highway 40
Highland, IL 62249

TO: MEC, Inc.
P.O. Box 278
Edwards AFB, CA 93523

FOR: COE Flight Eng Lab Complex Edwards AFB
Edwards Air Force Base
Edwards AFB, CA 93524

DOCUMENTS ENCLOSED:

- Subcontract (to be signed and returned via DocuSign)
- Instructions To Subcontractor
- Pay Application Instructions and Forms
- Affirmative Action Program
- Statement Appointing Paymaster
- Cert. Payroll Instructions
- Dept. of Labor – Sample Letter (notif. of lower tier subs)
- Quality Control Statement
- Safety Operating Statement & Drug-Free Workplace
- E-Verify Letter
- Exec. Comp. Form (complete & return)
- Prevailing Wage Rates

KORTE

**THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA**

# SUBCONTRACT FOR USE ON FEDERAL CONSTRUCTION

## TABLE OF ARTICLES


1. AGREEMENT
2. SCOPE OF WORK
3. SCHEDULE OF WORK
4. CONTRACT PRICE
5. PAYMENT
6. CHANGES, CLAIMS AND DELAYS
7. CONTRACTOR'S OBLIGATIONS
8. SUBCONTRACTOR'S OBLIGATIONS
9. SUBCONTRACT PROVISIONS
10. RECOURSE BY CONTRACTOR
11. LABOR RELATIONS
12. INDEMNIFICATION
13. INSURANCE
14. ARBITRATION
15. CONTRACT INTERPRETATION
16. SPECIAL PROVISIONS

SUBCONTRACT AMENDMENT
ATTACHMENT 'A' – Article 16.2 Scope of Work
ATTACHMENT 'B' – Article 16.5 Enumeration of Contract Documents
ATTACHMENT 'C' - Statement and Acknowledgement
ATTACHMENT 'D' - Lobbying Disclosure Form


This Agreement has important legal and insurance consequences. Consultation with an attorney and insurance consultant is encouraged with respect to its completion or modification. Federal regulations mandate that specific provisions flow-down from the prime contract to subcontract agreements. Because changes may be issued at any time and particular agencies may issue supplemental regulations, current Federal Acquisition Regulations and individual project specifications must be consulted.


© 1991, The Associated General Contractors of America

# TABLE OF CONTENTS


**ARTICLE 1 - Agreement**
1.1 Federal Acquisition Regulations
**ARTICLE 2 - Scope of Work**
2.1 Subcontractor's Work.
2.2 Contract Documents.
2.3 Conflicts.
**ARTICLE 3 - Schedule of Work**
3.1 Time is of Essence.
3.2 Duty to be Bound.
3.3 Schedule Changes.
3.4 Priority of Work.
**ARTICLE 4 - Contract Price**
**ARTICLE-5 - Payment**
5.1 General Provisions.
5.1.1 Schedule of Values.
5.1.2 Owner Verification.
5.1.3 Payment Use Restriction.
5.1.4 Payment Use Verification.
5.1.5 Affidavits.
5.1.6 Subcontractor Payment Failure.
5.1.7 Subcontractor Assignment of Payments
5.1.8 Payment Not Acceptance.
5.2 Withholding Payment for Deficiency of Subcontractor Performance.
5.2.1 Deficiency Discovered Before Progress Payment Request.
5.2.2 Deficiency Discovered After Request for Payment
5.2.3 Notice to Contractor of Miller Act Claims.
5.2.4 Written Notice to Subcontractor of Withholding.
5.3 Progress Payments.
5.3.1 Certification.
5.3.2 Application.
5.3.3 Retainage/Security.
5.3.4 Time of Application.
5.3.5 Stored Materials.
5.3.6 Time of Payment.
5.4 Final Payment.
5.4.1 Application.
5.4.2 Requirements.
5.4.3 Time of Payment.
5.4.4 Final Payment Delay.
5.5 Late Payment Interest.
5.6 Payment of Lower-Tier Subcontractors and Suppliers.
5.7 Lower Tier Subcontractor Rights.
**ARTICLE 6 - Changes, Claims & Delays**
6.1 Changes.
6.2 Claims Relating to Owner.
6.2.1 Subcontractor's Claims.
6.2.2 Duty to Proceed.
6.2.3 Notice Requirements.
6.3 Claims Relating to Contractor.
6.4 Delay.
6.5 Liquidated Damages.
**ARTICLE 7 - Contractor's Obligations**
7.1 Obligations Derivative.
7.2 Authorized Representative.
7.3 Storage Applications.
7.4 Timely Communications.
7.5 Non-Contracted Services.
**ARTICLE 8 - Subcontractor's Obligations**
8.1 Obligations Derivative.
8.2 Responsibilities.
8.3 Shop Drawings
8.4 Temporary Services.
8.5 Coordination.
8.6 Authorized Representative.
8.7 Provision for Inspection.
8.8 Cleanup.
8.9 Safety
8.10 Protection of the Work.
8.11 Permits, Fees and Licenses.
8.12 Subcontractor Assignment of Work.
8.13 Non-Contracted Services.
8.14 Materials Safety
**ARTICLE 9 - Subcontract Provisions**
9.1 Layout Responsibility and Levels.
9.2 Workmanship.
9.3 Materials Furnished by Others.
9.4 Substitutions.
9.5 Use of Contractor's Equipment.
9.6 Contract Bond Review.
9.7 Privity.
9.8 Subcontract Bond.
9.9 Warranty.
**ARTICLE 10 - Recourse by Contractor**
10.1 Failure of Performance.
10.1.1 Notice to Cure.
10.1.2 Termination by Contractor.
10.1.3 Use of Subcontractor's Equipment.
10.2 Bankruptcy.
10.2.1 Termination Absent Cure.
10.2.2 Interim Remedies.
10.3 Suspension by Owner.
10.4 Termination by Owner.
10.5 Suspension by Contractor.
10.6 Wrongful Exercise.
**ARTICLE 11 - Labor Relations**
**ARTICLE 12 - Indemnification**
12.1 Subcontractor's Performance.
12.2 No Limitation Upon Liability.
12.3 Owner Exclusion.
12.4 Compliance with Laws.
12.5 Patents.
12.6 Certifications.



© 1991, The Associated General Contractors of America

**ARTICLE 13 - Insurance**

13.1 Subcontractor's Insurance.
13.2 Minimum Limits of Liability.
13.3 Number of Policies.
13.4 Cancellation, Renewal or Modification.
13.5 Waiver of Rights.
13.6 Endorsement.

**ARTICLE 14 – Arbitration**

14.1 Agreement to Arbitrate.
14.2 Exceptions.
14.3 Initial Dispute Resolution.
14.4 Notice of Demand.
14.5 Award.
14.6 Work Continuation and Payment.
14.7 No Limitation of Rights or Remedies.
14.8 Same Arbitrators.

**ARTICLE 15 – Contract Interpretation**

15.1 Inconsistencies and Omissions.
15.2 Law and Effect.
15.2.1 Severability and Waiver
15.2.2 Attorney's Fees
15.2.3 Titles.
15.2.4 Entire Agreement.

**ARTICLE 16 – Special Provisions**

16.1 Precedence.
16.2 Scope of Work.
16.3 Common Temporary Services.
16.4 Other Special Provisions
16.5 Contract Documents.


© 1991, The Associated General Contractors of America

SUBCONTRACT ON FOR USE ON FEDERAL CONSTRUCTION

## ARTICLE 1

### AGREEMENT

This Agreement is made this 2nd day of October 2024, by and between The Korte Company hereinafter called the Contractor, and MEC, Inc. hereinafter called the Subcontractor, to perform a portion of the Work on the following Federal Construction Project:

| | |
|---|---|
| **FEDERAL CONSTRUCTION PROJECT:** | COE Flight Eng Lab Complex Edwards AFB<br>Edwards Air Force Base<br>Edwards AFB, CA 93524 |
| **OWNER:** | US Army Corps of Engineers - Los Angeles District<br>915 Wilshire Blvd.<br>Los Angeles, CA 90017 |
| **CONTRACT NUMBER:** | W912PL21C0028 |
| **CONTRACTOR:** | The Korte Company<br>12441 U.S. Highway 40<br>Highland, IL 62249 |
| **SUBCONTRACTOR:** | MEC, Inc.<br>P.O. Box 278<br>Edwards AFB, CA 93523 |

**CONTRACT PRICE:**
One Million Three Hundred Fifty-One Thousand Six Hundred Sixty-Six Dollars and Twenty-four cents ($1,351,666.24)

(Here insert a lump sum, unit price or both. Bid schedules may be referenced.)

| | |
|---|---|
| Demolition and Abatement of Building 1400 Base Bid Amount: | $1,351,666.24 |
| Total Contract Amount: | $1,351,666.24 |

**Notice to the parties shall be given at the above addresses.**

**1.1 FEDERAL ACQUISITION REGULATIONS (FAR).** This Agreement is governed by applicable Federal Acquisition Regulations. Because changes to these regulations may be issued at any time and particular agencies may issue supplemental regulations, current FAR provisions and individual project specifications must be consulted.


© 1991, The Associated General Contractors of America

## ARTICLE 2
## SCOPE OF WORK

**2.1 SUBCONTRACTOR'S WORK.** The Contractor contracts with the Subcontractor as an independent contractor to perform the work described in Article 16. The Subcontractor shall perform such work (hereinafter called the "Subcontractor's Work") under the general direction of the Contractor and in accordance with this Agreement and the Contract Documents.

**2.2 CONTRACT DOCUMENTS.** The Contract Documents which are binding on the Subcontractor are as set forth in Paragraph 16.5. Upon the Subcontractor's request the Contractor shall furnish a copy of any part of these documents. Nothing in the Contract Documents shall be construed to create a contractual relationship between persons or entities other than the Contractor and Subcontractor.

**2.3 CONFLICTS.** In the event of a conflict between this Agreement and the Contract Documents, this Agreement shall govern.

## ARTICLE 3
## SCHEDULE OF WORK

**3.1 TIME IS OF ESSENCE.** Time is of the essence for both parties. and they mutually agree to see to the performance of their respective work and the work of their subcontractors so that the entire Project may be completed in accordance with the Contract Documents and the Schedule of Work. The Contractor shall prepare the Schedule of Work and revise such schedule as the Work progresses.

**3.2 DUTY TO BE BOUND.** Both the Contractor and the Subcontractor shall be bound by the Schedule of Work. The Subcontractor shall provide the Contractor with any requested scheduling information for the Subcontractor's Work. The Subcontractor will stay informed as to revisions in the project schedule which may affect the Subcontractor's Work. The Schedule of Work and all subsequent changes thereto shall be submitted to the Subcontractor in advance of the required performance.

**3.3 SCHEDULE CHANGES.** The Subcontractor recognizes that changes will be made in the Schedule of Work and agrees to comply with such changes.

**3.4 PRIORITY OF WORK.** The Contractor shall have the right to decide the time, order and priority in which the various portions of the Work shall be performed and all other matters relative to the timely and orderly conduct of the Subcontractor's Work.

The Subcontractor shall commence its work within 10 days of notice to proceed from the Contractor. If such work is interrupted for any reason, the Subcontractor shall resume such work within two (2) working days from the Contractor's notice to do so.

If no date is specified in the paragraph above, Subcontractor shall proceed per the schedule maintained by Contractor.

## ARTICLE 4
## CONTRACT PRICE

The Contractor agrees to pay to the Subcontractor for the satisfactory performance of the Subcontractor's Work the amount stated in Article 1, subject to additions or deductions per Article 6.

## ARTICLE 5
## PAYMENT

**5.1 GENERAL PROVISIONS.** The payment provisions of this contract are governed by certain provisions in 31 U.S.C. §3901 et seq.

**5.1.1 SCHEDULE OF VALUES.** The Subcontractor shall provide a schedule of values satisfactory to the Contractor and the Owner no more than fifteen (15) days from the date of execution of this Agreement.

**5.1.2 OWNER VERIFICATION.** Upon request the Contractor shall give the Subcontractor written authorization to obtain directly from the Owner's representative the percentage of completion certified for the Subcontractor's Work.

**5.1.3 PAYMENT USE RESTRICTION.** Payment received by the Subcontractor shall be used to satisfy the indebtedness owed by the Subcontractor to any person furnishing labor or materials for use in performing the Subcontractor's Work on this project before it is used in any other manner.

**5.1.4 PAYMENT USE VERIFICATION.** The Contractor shall have the right at all times to contact the Subcontractor's subcontractors and suppliers to ensure that the same are being paid promptly by the Subcontractor for labor or materials furnished for use in performing the Subcontractor's Work.

**5.1.5 AFFIDAVITS.** As a prerequisite for payment, the Subcontractor shall provide in a form satisfactory to the Owner and the Contractor in addition to the requirements in 5.3.1, claim waivers and affidavits from the Subcontractor, its subcontractors and suppliers for the completed Subcontractor's Work. Such waivers may be made conditional upon payment.

**5.1.6 SUBCONTRACTOR PAYMENT FAILURE.** Upon payment by the Contractor, Subcontractor shall promptly pay its lower-tier subcontractors and material suppliers the amounts to which they are entitled. In the event the Contractor has reason to believe that labor, material or other obligations incurred in the performance of the Subcontract-or's Work are not being paid, the Contractor may give written notice of such claim to the Subcontractor and may take any steps deemed necessary to assure that any progress payments are utilized to pay such obligations including but not limited to the issuance of joint checks.

If upon receipt of said notice, the Subcontractor does not (a) supply evidence to the satisfaction of the Contractor that the monies owing to the claimant(s) have been paid, or (b) post a bond indemnifying the Owner, the Contractor, the Contractor's surety, if any, and the premises from such claim; then the Contractor shall have the right, without incurring an obligation to pay an interest penalty, to withhold payments or parts of payments due or to become due to the Subcontractor in the manner described at Paragraph 5.2.

**5.1.7 SUBCONTRACTOR ASSIGNMENT OF PAYMENTS.** The Subcontractor shall not assign any moneys due or to become due under this Contract, or under any Change Order thereto, without the written consent of Contractor, unless such assignment is intended to create a new security interest within the scope of Article 9 of the Uniform Commercial Code.


© 1991, The Associated General Contractors of America

Should Subcontractor assign all or any part of any moneys due or to become due under this Contract, to create a new security interest or for any other purpose, the instrument of assignment shall contain a clause to the effect that the assignee's right in and to any money due or to become due to the Subcontractor shall be subject to the claims of all persons, firms and corporations for services rendered or materials supplied for the performance of the Work under this Subcontract and any Change Orders

**5.1.8 PAYMENT NOT ACCEPTANCE.** Payment to the Subcontractor does not constitute or imply acceptance of any portion of the Subcontractor's Work.

**5.2 WITHHOLDING PAYMENT FOR DEFICIENCY OF SUBCONTRACTOR PERFORMANCE**

**5.2.1 DEFICIENCY DISCOVERED BEFORE PROGRESS PAYMENT REQUEST.** On discovering a deficiency in the Subcontractor's performance before making a progress payment request for work performed by the Subcontractor, the Contractor upon written notice to the Subcontractor may deduct amounts that in the Contractor's judgment are sufficient to cover the cost of correction, to cover losses caused by the deficiency and to compel the Subcontractor promptly to remedy the performance deficiency. No obligation for a late payment interest penalty is incurred when deductions are made for performance deficiency. The Contractor shall provide notice to the Subcontractor as provided in Subparagraph 5.2.4.

**5.2.2 DEFICIENCY DISCOVERED AFTER SUBMITTING REQUEST FOR PAYMENT.** If the Contractor discovers a deficiency in the Subcontractor's performance after requesting a progress payment for the Subcontractor's performance but before payment would otherwise be due, the Contractor may, without obligation for late payment interest penalty, withhold from the Subcontractor payment received from the Owner. Amounts withheld shall be sufficient to remedy the deficiency, to cover losses caused by the deficiency. and to compel prompt remedial performance. The Contractor shall notify the Subcontractor in the manner provided at Subparagraph 5.2.4 of the reasons for the withholding as soon as practicable after discovering the deficiency.

The Subcontractor shall reimburse the Contractor for interest penalties incurred by the Contractor to the Owner and caused in any part by the Subcontractor's failure to correct a deficiency described in a notice as required by Subparagraph 5.2.4. (Interest incurred by the Contractor to the Owner is due from the eighth day after receipt of the amounts withheld from the Subcontractor until the day the Subcontractor performance deficiency is corrected or any subsequent payment request is adjusted. Interest shall be computed on the basis of the Federal Rate for three-month Treasury Bills (31 U.S.C. §3903 (c)(1)).

Upon satisfactory correction of the deficiency, the Contractor shall pay the amounts withheld which remain owing after the satisfactory correction, as follows, or incur a late payment interest penalty as provided at Paragraph 5.5:

(a) Amounts held in the Contractor's possession shall be paid as soon as practicable but no later than seven (7) days after satisfactory correction of the deficiency.

(b) Amounts held by the Owner shall be paid within seven (7) days of receipt from the Owner by the Contractor.

**5.2.3 NOTICE TO CONTRACTOR OF MILLER ACT CLAIMS.** If after making payment to the Subcontractor. the Contractor receives written notice from a supplier or a second-tier subcontractor, in accordance with 40 U.S.C. §270b, of a deficiency in the Subcontractor's performance, the Contractor may, without incurring an obligation for late payment interest penalty, withhold from the Subcontractor's next available payment, or deduct from the next payment application an amount sufficient to compel prompt remedial performance. Before withholding or deduction, the Contractor shall provide notice to the Subcontractor as provide in Subparagraph 5.2.4.

The Contractor shall withhold this amount until it accepts satisfactory written notification from the supplier or second tier subcontractor that the subcontract performance deficiency has been corrected.

After receiving satisfactory written notice, the Contractor shall pay the withheld amount due the Subcontractor as follows, or incur a late payment interest penalty as provided at Paragraph 5.5:

(a) Amounts held in the Contractor's possession shall be paid as soon as practicable but no later than seven (7) days after receipt of such satisfactory notification.

(b) Amounts held by the Owner shall be paid within seven (7) days of receipt from the Owner by the Contractor.

**5.2.4 WRITTEN NOTICE TO SUBCONTRACTOR OF WITHHOLDING.** The Contractor shall provide the Subcontractor with written notice of any withholding, specifying:

(a) the amount to be withheld;

(b) the specific causes for the withholding under the terms of this Agreement; and

(c) the remedial actions to be taken by the Subcontractor in order to receive payment of the amount withheld.

**5.3 PROGRESS PAYMENTS**

**5.3.1 CERTIFICATION.** A payment request may not be approved unless the payment application includes substantiation of the amounts requested and certification by the Subcontractor that

(a) the amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(b) payments to the Subcontractor's subcontractors and suppliers have been made from previous payments received under this Agreement, that they have been paid in full all sums to which they are entitled, and timely payments will be made from the proceeds of the payment covered by the certification in accordance with their agreements and the requirements of 31 U.S.C. §3901 et seq.; and

(c) the application does not include any amounts which the Subcontractor intends to withhold or retain from a lower-tier subcontractor or supplier in accordance with the terms and conditions of this Agreement.

The Contractor is entitled to rely upon the Subcontractor's certification in the Contractor's payment requests to the Government concerning the Subcontractor's performance.

**5.3.2 APPLICATION.** The Subcontractor's progress payment application for work performed in the preceding payment period shall be submitted to the Contractor per the terms of this Agreement and specifically Subparagraphs 5.1.1, 5.3.2, 5.3.3, and 5.3.4 for approval of the Contractor and Contracting Officer.


© 1991, The Associated General Contractors of America

The Contractor shall forward, without delay, the approved value to the Owner for payment.

**5.3.3 RETAINAGE/SECURITY.** The Contractor may retain (without cause) 10% of each progress payment otherwise due to the Subcontractor for satisfactory performance under this Agreement without incurring any obligation to pay a late payment interest penalty. If the Subcontractor has furnished performance and payment bonds or other equivalent security to the satisfaction of the Contractor, the rate of retainage shall not exceed the percentage retained from the Contractor's payment by the Owner for the Subcontractor's work.

If the Subcontractor has furnished such bond or security, its work is satisfactory and the Contract Documents provide for reduction of retainage at a specified percentage of completion, the Subcontractor's retainage shall also be reduced when the Subcontractor's Work has attained the same percentage of completion and the Contractor's retainage for the Subcontractor's Work has been so reduced by the Owner.

**5.3.4 TIME OF APPLICATION.** The Subcontractor shall submit progress payment applications to the Contractor no later than the 25th day of each payment period for work performed up to and including the last day of the payment period indicating work completed and, to the extent allowed under Subparagraph 5.3.5, materials suitably stored during the preceding payment period.

**5.3.5 STORED MATERIALS.** Unless otherwise provided in the Contract Documents, and if approved in advance by the Owner, applications for payment may include materials and equipment not incorporated in the Subcontractor's Work but delivered to and suitably stored at the site or at some other location agreed upon in writing. Approval of payment applications for such stored items on or off the site shall be conditioned upon submission by the Subcontractor of bills of sale and applicable insurance or such other procedures satisfactory to the Owner and Contractor to establish the Owner's title to such materials and equipment or otherwise protect the Owner's and Contractor's interest therein, including transportation to the site.

**5.3.6 TIME OF PAYMENT.** Progress payments to the Subcontractor for satisfactory performance of the Subcontractor's Work shall be made no later than seven (7) days after receipt by the Contractor of payment from the Owner for the Subcontractor's Work.

**5.4 FINAL PAYMENT**

**5.4.1 APPLICATION.** Upon acceptance of the Subcontractor's Work by the Owner and Contractor. and upon the Subcontractor furnishing evidence of fulfillment of the Subcontractor's obligations in accordance with the Contract Documents and Subparagraph 5.4.2, the Contractor shall forward the Subcontractor's application for final payment without delay.

**5.4.2 REQUIREMENTS.** Before the Contractor shall be required to forward the Subcontractor's application to final payment to the Owner, the Subcontractor shall submit to the Contractor

(a) an affidavit that all payrolls, bills for materials and equipment, arid other indebtedness connected with the Subcontractor's Work for which the Owner or the Contractor or the Contractor's surety might in any way be liable, have been paid or otherwise satisfied;

(b) consent of surety to final payment, if required;

(c) satisfaction of required closeout procedures-,

(d) certification that insurance required by the Contract Documents to remain in effect beyond final payment pursuant to Paragraph 13.4 is in effect and will not be cancelled or allowed to expire without at least thirty (30) days' written notice to the Contractor unless a longer period is stipulated in the Contract; and

(e) other substantiation and certification as required by Subparagraph 5.3.1, including but not limited to receipts, releases, and waivers of claims to the extent and in such form as may be designated by the Contractor or Owner.

Final payment shall constitute a waiver of all claims by the Subcontractor relating to the Subcontractor's Work, but shall in no way relieve the Subcontractor of liability for the obligations assumed under Paragraph 9.9 or for faulty or defective work appearing after final payment.

**5.4.3 TIME OF PAYMENT.** Final payment of the balance due of the Contract Price shall be made to the Subcontractor within seven (7) days after receipt by the Contractor of final payment from the Owner for such Subcontractor's Work. Final payment from the Owner does not constitute a release of liability for unknown defective work or noncompliance with the Contract Documents or warranties,

**5.4.4 FINAL PAYMENT DELAY.** If the Owner or its designated agent does not issue a certificate for Final Payment or the Contractor does not receive such payment for any cause which is not the fault of the Subcontractor, at the Subcontractor's request and expense, to the extent agreed upon in writing, the Contractor shall institute reasonable legal remedies to mitigate the damages and pursue payment of the Subcontractor's final payment including interest thereon.

**5.5 LATE PAYMENT INTEREST.** Progress payments or final payment due and unpaid under this Agreement shall bear interest from the day after the required payment date until the date on which payment of the amount due is made. Interest shall be computed on the basis of the Federal Cost of Money Rate (Renegotiation Rate). (31 U.S.C. §3902(a))

**5.6 PAYMENT OF LOWER TIER SUBCONTRACTORS AND SUPPLIERS.** The Subcontractor agrees to incorporate a payment clause and an interest penalty clause conforming to the requirements of the Prompt Payment Act (31 U.S.C. §3905) in its subcontracts with its subcontractors or suppliers and to require them to include such clauses in their subcontracts with lower-tier subcontractors or suppliers. The payment clause and interest penalty clause shall not apply to routine commercial transactions that are not the subject of a contract agreement requiring compliance with specifications, terms or conditions applicable to this Agreement or the Contract Documents.

**5.7 LOWER TIER SUBCONTRACTOR RIGHTS.** The Subcontractor will not invoice the Contractor for any sums it intends, to withhold or suspend. If the Subcontractor withholds sums at any time, Subcontractor will notify the Contractor and the Contractor shall deduct the amount withheld from the next payment to Subcontractor.


© 1991, The Associated General Contractors of America

To the extent that the Prompt Payment Act Amendments of 1988 require certain actions by the Contractor for the benefit of the Subcontractor, the Subcontractor will take identical actions for the benefit of its lower tier subcontractors. Accordingly, Subcontractor is bound to the Contractor as the Contractor is bound to the Owner. and is further bound to its lower tier subcontractors for those obligations which Contractor owes to Subcontractor under the provisions of the Act.

## ARTICLE 6

## CHANGES, CLAIMS AND DELAYS

**6.1 CHANGES.** When the Contractor orders in writing, the Subcontractor, without nullifying this Agreement, shall make any and all changes in the Work which are within the general scope of this Agreement.

Adjustments in the Contract Price or contract time, if any, resulting from such changes shall be set forth in a Subcontract Change Order or a Subcontract Construction Change Directive. No such adjustments shall be made for any changes performed by the Subcontractor that have not been ordered by the Contractor.

A Subcontract Change Order is a written instrument prepared by the Contractor and signed by the Subcontractor stating their agreement upon the change in the scope of the Work, adjustment in the Contract Price or Schedule of Work. A Subcontract Construction Change Directive is a written instrument prepared by the Contractor directing a change in the Work and stating a proposed adjustment, if any, in the Contract Price or Schedule of Work or both. A Subcontract Construction Change Directive shall be used in the absence of agreement on the terms of a Subcontract Change Order.

**6.2 CLAIMS RELATING TO OWNER.**

**6.2.1 SUBCONTRACTOR'S CLAIMS.** The Subcontractor agrees to make all claims for which the Owner is or may be liable. Any dispute arising under this Agreement relating to the Owner may be pursued as follows:

(a) The Contractor may include the dispute in a claim against the Owner and may require the Subcontractor to participate in the prosecution and share in the expense of such claim, or

(b) The Subcontractor, subject to the Contractor's approval and in accordance with agreed-upon procedures and conditions, may at its own expense submit a claim against the Owner in the name of the Contractor.

(c) For any claim regardless of amount brought against the Owner, the Subcontractor shall provide to the Contractor a certification as required by the Contract Disputes Act U.S.C. §605).

(d) For any claim brought against the Owner, the Owner's final decision or any final ruling in accordance with the Contract Disputes Act shall be final and binding upon the Subcontractor and the Subcontractor shall have no recourse against the Contractor.

**6.2.2 DUTY TO PROCEED.** The Subcontractor shall proceed diligently with performance of the Work pending final resolution of any request for relief, claim, appeal, or action arising under this Agreement.

**6.2.3 NOTICE REQUIREMENTS.** To the extent the Contract Documents or the Federal Acquisition Regulations require the Contractor to give the various specific notices to the Owner as the work progresses, the Subcontractor shall give timely written notice to the Contractor sufficiently in advance of the time limits to enable the Contractor to act in accordance with the Owner's requirements. Otherwise, the Subcontractor will be deemed to have waived any claims based on such events.

**6.3 CLAIMS RELATING TO CONTRACTOR.** The Subcontractor shall give the Contractor written notice of all claims not included in Paragraph 6.2 within five (5) days of the occurrence of the event for which claim is made; otherwise, such claims shall be deemed waived.

All unresolved claims, disputes and other matters in question between the Contractor and the Subcontractor not relating to claims included in Paragraph 6.2 shall be resolved in the manner provided in Article 14.

**6.4 DELAY.** If the progress of the Subcontractor's Work is substantially delayed without the fault or responsibility of the Subcontractor, then the time for the Subcontractor's Work shall be extended by Subcontract Change Order or Subcontract Change Directive to the extent obtained by the Contractor under the Contract Documents and the Schedule of Work shall be revised accordingly.

The Contractor shall not be liable to the Subcontractor for any damages or additional compensation as a consequence of delays caused by any person not a party to this Agreement unless the Contractor has first recovered the same on behalf of the Subcontractor from said person, it being understood and agreed by the Subcontractor that, apart from recovery from said person. the Subcontractor's sole and exclusive remedy for delay shall be an extension in the time for performance of the Subcontractor's Work.

**6.5 LIQUIDATED DAMAGES.** If the Contract Documents provide for liquidated or other damages for delay beyond the completion date set forth in the Contract Documents, and such damages are assessed, then the Contractor may assess same against the Subcontractor in proportion to the Subcontractor's share of the responsibility for such delay. However the amount of such assessment shall not exceed the amount assessed against the Contractor.

Nothing set forth herein shall limit the Subcontractor's liability to the Contractor for the Contractor's actual delay damages caused by the Subcontractor's delay. The Subcontractor shall be liable to the Contractor for the Contractor's actual damages caused by the Subcontractor's delay.

## ARTICLE 7

## CONTRACTOR'S OBLIGATIONS

**7.1 OBLIGATIONS DERIVATIVE.** Prior to executing this Subcontract, the Contractor shall make available to the Subcontractor the Contract Documents which are binding on the Subcontractor and set forth in Paragraph 16.5.

**7.2 AUTHORIZED REPRESENTATIVE.** The Contractor shall designate one or more persons who shall be the Contractor's authorized representative(s) (a) on-site and (b) off-site. Such authorized representative(s) shall be the only person(s) the Subcontractor shall look to for instructions, orders and/or directions, except in an emergency affecting the safety of persons or property.


© 1991, The Associated General Contractors of America

**7.3 STORAGE APPLICATIONS.** The Contractor shall allocate adequate storage areas, if available, for the Subcontractor's materials and equipment during the course of the Subcontractor's Work.

**7.4 TIMELY COMMUNICATIONS.** The Contractor shall transmit, with reasonable promptness, all submittals, transmittals, and written approvals relating to the Subcontractor's Work.

**7.5 NON-CONTRACTED SERVICES.** The Contractor agrees, except as otherwise provided in this Agreement, that no claim for non-contracted construction services rendered or materials furnished shall be valid unless the Contractor provides the Subcontractor notice:

(a) prior to furnishing of the services and materials, except in an emergency affecting the safety of persons or property;

(b) in writing of such claim within three days of first furnishing such services or materials; and

(c) the written charges for such services or materials no later than the fifteenth (15th) day of the calendar month following that in which the claim originated.

## ARTICLE 8
## SUBCONTRACTOR'S OBLIGATIONS

**8.1 OBLIGATIONS DERIVATIVE.** The Subcontractor binds itself to the Contractor under this Agreement in the same manner as the Contractor is bound to the Owner under the Contract Documents, applicable Federal Acquisition Regulations and supplemental agency regulations; and the Subcontractor will so bind its lower-tier subcontractors. The Subcontractor shall make available to its lower-tier subcontractors the Contract Documents which are binding on the lower-tier subcontractors.

**8.2 RESPONSIBILITIES.** The Subcontractor shall furnish all of the labor, materials, equipment, and services, including, but not limited to, competent supervision, shop drawings, samples, tools, and scaffolding as are necessary for the proper performance of the Subcontractor's Work in strict accordance with and reasonably inferable from the Contract Documents.

The Subcontractor shall provide a list of proposed subcontractors, and suppliers, be responsible for taking field dimensions, providing tests, ordering of materials and all other actions as required to meet the Schedule of Work.

**8.3 SHOP DRAWINGS.** The Subcontractor shall be responsible to the Contractor for the accuracy and conformity with the Contract Documents and other submittals that pertain to its work in the same manner as the Contractor is responsible therefor to the Owner. Shop drawings, or their approval by the Contractor, shall not be deemed to authorize deviations or substitutions from the requirements of the Contract Documents.

**8.4 TEMPORARY SERVICES.** The Subcontractor shall furnish all temporary services and/or facilities necessary to perform its work, except as provided in Article 16. Said article also identifies those common temporary services (if any) which are to be furnished by the Subcontractor.

**8.5 COORDINATION.** The Subcontractor shall:

(a) cooperate with the Contractor and all others whose work may interfere with the Subcontractor's Work;

(b) specifically note and immediately advise the Contractor of any such interference with the Subcontractor's Work; and

(c) participate in the preparation of coordination drawings and work schedules in areas of congestion.

**8.6 AUTHORIZED REPRESENTATIVE.** The Subcontractor shall designate one or more persons who shall be the authorized Subcontractor's representative(s) (a) on-site and (b) off-site. Such authorized representative(s) shall be the only person(s) to whom the Contractor shall issue instructions, orders or directions, except in an emergency affecting the safety of persons or property.

**8.7 PROVISION FOR INSPECTION.** The Subcontractor shall notify the Contractor when portions of the Subcontractor's Work are ready for inspection. The Subcontractor shall at all times furnish the Contractor and its representatives adequate facilities for inspecting materials at the site or any place where materials under this Agreement may be in the course of preparation, process, manufacture or treatment.

The Subcontractor shall furnish to the Contractor in such detail and as often as required, full reports of the progress of the Subcontractor's Work irrespective of the location of such work.

**8.8 CLEANUP.** The Subcontractor shall follow the Contractor's cleanup and safety directions, and

(a) at all times keep the building and premises free from debris and unsafe conditions resulting from the Subcontractor's Work; and

(b) broom clean each work area prior to discontinuing work in the same.

If the Subcontractor fails to immediately commence compliance with clean-up duties within twenty-four (24) hours after written notification from the Contractor of non-compliance, the Contractor may implement such cleanup measures without further notice and deduct the cost thereof from any amounts due or to become due the Subcontractor.

**8.9 SAFETY.** The prevention of accidents on or in the vicinity of its Work is the Subcontractor's responsibility, even if Contractor establishes a safety program for the entire Project. Subcontractor shall establish a safety program implementing safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by the Contractor and Owner, including, but not limited to, requirements imposed by the Contract Documents. Subcontractor shall comply with the reasonable recommendations of insurance companies having an interest in the Project, and shall stop any part of the Work which Contractor deems unsafe until corrective measures satisfactory to Contractor shall have been taken. Contractor's failure to stop Subcontractor's unsafe practices shall not relieve Subcontractor of the responsibility therefor. Subcontractor shall notify Contractor immediately following any accident and promptly confirm the notice in writing. A detailed written report shall be furnished if requested by the Contractor. Subcontractor shall indemnify Contractor for fines, damages or expenses incurred by the Contractor because of the Subcontractor's failure to comply with safety requirements.


© 1991, The Associated General Contractors of America

**8.10 PROTECTION OF THE WORK.** The Subcontractor shall take necessary precautions to properly protect the Subcontractor's Work and the work of others from damage caused by the Subcontractor's operations. Should the Subcontractor cause damage to the Work or property of the Owner, the Contractor or others, the Subcontractor shall promptly remedy such damage to the satisfaction of the Contractor, or the Contractor may so remedy and deduct the cost thereof from any amounts due or to become due the Subcontractor.

**8.11 PERMITS, FEES AND LICENSES.** The Subcontractor shall give adequate notices to authorities pertaining to the Subcontractor's Work and secure and pay for all permits, fees, licenses, assessments, inspections and taxes necessary to complete the Subcontractor's Work in accordance with the Contract Documents.

To the extent obtained by the Contractor under the Contract Documents, the Subcontractor shall be compensated for additional costs resulting from laws, ordinances, rules, regulations and taxes enacted after the date of the Agreement.

**8.12 SUBCONTRACTOR ASSIGNMENT OF WORK.** The Subcontractor shall not assign the whole nor any part of the Subcontractor's Work without prior written approval of the Contractor. The Contractor's approval shall not be unreasonably withheld. Lower-tier subcontractors and suppliers previously approved by the Contractor may be listed at Paragraph 16.4.

**8.13 NON-CONTRACTED SERVICES.** The Subcontractor agrees, except as otherwise provided in this Agreement, that no claim for non-contracted construction services rendered or materials furnished shall be valid unless the Subcontractor provides the Contractor notice:

(a) prior to furnishing of the services or- materials, except in an emergency affecting the safety of persons or property.

(b) in writing of such claim within three days of first furnishing such services or materials; and

(c) the written charge for such services or materials no later than the fifteenth (15th) day of the calendar month following that in which the claim originated.

**8.14 MATERIALS SAFETY.** To the extent that the Contractor is not obligated by the Contract Documents or by law to perform work which involves pollutants, hazardous or toxic substances, hazardous waste, asbestos or PCB'S, the Subcontractor likewise is not obligated. To the extent that the Contractor has obligations under the Contract Documents or by law regarding such materials within the scope of the Subcontractor's Work, the Subcontractor likewise shall have these obligations.

## ARTICLE 9

## SUBCONTRACT PROVISIONS

**9.1 LAYOUT RESPONSIBILITY AND LEVELS.** The Contractor shall establish principal axis lines of the building and site whereupon the Subcontractor shall lay out and be strictly responsible for the accuracy of the Subcontractor's Work and for any loss or damage to the Contractor or others by reason of the Subcontractor's failure to set out or perform its work correctly. The Subcontractor shall exercise prudence so that the actual final conditions and details shall result in alignment of finish surfaces.

**9.2 WORKMANSHIP.** Every part of the Subcontractor's Work shall be executed in strict accordance with the Contract Documents in the most sound, workmanlike, and substantial manner. All workmanship shall be of the best of its several kinds, and all materials used in the Subcontractor's Work shall be furnished in ample quantities to facilitate the proper and expeditious execution of the work, and shall be new, except such materials as may be expressly provided in the Contract Documents to be otherwise.

**9.3 MATERIALS FURNISHED BY OTHERS.** In the event the scope of the Subcontractor's Work includes installation of materials or equipment furnished by others, it shall be the responsibility of the Subcontractor to examine the items so provided and thereupon handle, store and install the items with such skill and care as to ensure a satisfactory and proper installation. Loss or damage due to acts of the Subcontractor shall be deducted from any amounts due or to become due the Subcontractor.

**9.4 SUBSTITUTIONS.** No substitutions shall be made in the Subcontractor's Work unless permitted in the Contract Documents and only then upon the Subcontractor first receiving all approvals required under the Contract Documents for substitutions. The Subcontractor shall indemnify the Contractor as a result of such substitutions, whether or not the Subcontractor has obtained approval thereof.

**9.5 USE OF CONTRACTOR'S EQUIPMENT.** The Subcontractor, its agents, employees, subcontractors or suppliers shall not use the Contractor's equipment without the express written permission of the Contractor's designated representative.

If the Subcontractor or any of its agents, employees, suppliers or lower tier subcontractors utilize any machinery, equipment, tools, scaffolding, hoists, lifts or similar items owned, leased. or under the control of the Contractor, the Subcontractor shall defend, indemnify and be liable to the Contractor as provided in Article 12 for any loss or damage (including personal injury or death) which may arise from such use, except where such loss or damage shall be found to have been due solely to the negligence of the Contractor's employees operating such equipment.

**9.6 CONTRACT BOND REVIEW.** The Contractor's Payment Bond for the Project, if any, may be reviewed and copied by the Subcontractor.

**9.7 PRIVITY.** Until final completion of the Project, the Subcontractor agrees not to perform any work directly for the Owner or any tenants thereof, or deal directly with the Owner's representatives in connection with the Project, unless otherwise directed in writing by the Contractor. All Work for this Project performed by the Subcontractor shall be processed and handled exclusively by the Contractor.

**9.8 SUBCONTRACT BOND.** If a Performance and Payment Bond is not required of the Subcontractor under Article 16, then within the duration of this Agreement, the Contractor may require such bonds before work is started and the Subcontractor shall provide the same.

Said bonds shall be in full amount of this Agreement in a form and by a surety satisfactory to the Contractor.


© 1991, The Associated General Contractors of America

The Subcontractor shall be reimbursed without retainage for cost of same simultaneously with the first progress payment hereunder.

The reimbursement amount for the bonds shall not exceed the manual rate for such subcontractor work.

In the event the Subcontractor shall fail to promptly provide such requested bonds, the Contractor may terminate this Agreement and re-let the work to another Subcontractor and all Contractor costs and expenses incurred thereby shall be paid by the Subcontractor.

**9.9 WARRANTY.** The Subcontractor warrants its work against all deficiencies and defects in materials and/or workmanship and as called for in the Contract Documents.

The Subcontractor agrees to satisfy such warranty obligations which appear within the warranty period established in the Contract Documents without cost to the Owner or the Contractor.

If no warranty is required of the Contractor in the Contract Documents, then the Subcontractor shall warrant its work as described above for the period of one year from the date(s) of substantial completion of all or a designated portion of the Subcontractor's Work or acceptance or use by the Contractor or Owner of designated equipment, whichever is sooner.

The Subcontractor further agrees to execute any special warranties that may be required for the Subcontractor's Work prior to final payment.

## ARTICLE 10

## RECOURSE BY CONTRACTOR

### 10.1 FAILURE OF PERFORMANCE

**10.1.1 NOTICE TO CURE.** If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work, or it fails to make prompt payment for its workers, lower-tier subcontractors or suppliers, disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a material breach of a provision of this Agreement, the Subcontractor shall be deemed in default of this Agreement. If the Subcontractor fails within three (3) working days after written notification to commence and continue satisfactory correction of such default with diligence and promptness, then the Contractor, without prejudice to any rights or remedies, shall have the right to any or all of the following remedies:

(a) supply such number of workers and quantity of materials, equipment and other facilities as the Contractor deems necessary for the completion of the Subcontractor's Work; or any part thereof which the Subcontractor has failed to complete or perform after the aforesaid notice, and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same, including reasonable overhead, profit and attorney's fees;

(b) contract with one or more additional contractors to perform such part of the Subcontractor's Work as the Contractor shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to the Subcontractor;

(c) withhold payment of any monies due the Subcontractor pending corrective action in amounts sufficient to cover losses and compel performance to the extent required by and to the satisfaction of the Contractor and US Army Corps of Engineers - Los Angeles District
in the manner described at Paragraph 5.2 and without obligation for late payment interest penalty, and

(d) in the event of an emergency affecting the safety of persons or property, the Contractor may proceed as above without notice.

**10.1.2 TERMINATION BY CONTRACTOR.** If the Subcontractor fails to commence and satisfactorily continue correction of a default within three (3) working days after written notification issued under Subparagraph 10.1.1, then the Contractor may, in lieu of or in addition to Subparagraph 10.1.1, issue a second written notification to the Subcontractor and its surety, if any. Such notice shall state that if the Subcontractor fails to commence and continue correction of a default within seven (7) working days of the written notification, the Agreement will be deemed terminated and the Contractor may use any materials, implements, equipment, appliances or tools furnished by or belonging to the Subcontractor to complete the Subcontractor's Work.

The Contractor also may furnish those materials, equipment and/or employ such workers or subcontractors as the Contractor deems necessary to maintain the orderly progress of the Work.

All costs incurred by the Contractor in performing the Subcontractor's Work, including reasonable overhead, profit and attorney's fees, shall be deducted from any monies due or to become due the Subcontractor. The Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the subcontract price.

**10.1.3 USE OF SUBCONTRACTOR'S EQUIPMENT.** If the Contractor performs work under this Article or sublets such work to be so performed, the Contractor and/or the persons to whom work has been sublet shall have the right to take and use any materials, implements, equipment, appliances or tools furnished by, belonging or delivered to the Subcontractor and located at the Project.

### 10.2 BANKRUPTCY

**10.2.1 TERMINATION ABSENT CURE.** If Subcontractor files a petition under the Bankruptcy Code, this Agreement shall terminate if the Subcontractor or the Subcontractor's trustee rejects the Agreement or, if there has been a default, the Subcontractor is unable to give adequate assurance that the Subcontractor will perform as required by this Agreement or otherwise is unable to comply with the requirements for assuming this Agreement under the applicable provisions of the Bankruptcy Code.

**10.2.2 INTERIM REMEDIES.** If the Subcontractor is not performing in accordance with the Schedule of Work at the time a petition in bankruptcy is filed, or at any subsequent time, the Contractor, while awaiting the decision of the Subcontractor or its trustee to reject or to assume this Agreement and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Article as are reasonably necessary to maintain the Schedule of Work.


© 1991, The Associated General Contractors of America

The Contractor may offset against any sums due or to become due the Subcontractor all costs incurred in pursuing any of the remedies provided hereunder, including, but not limited to, reasonable overhead, profit and attorney's fees.

The Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

**10.3 SUSPENSION BY OWNER.** Should the Owner suspend the Contract with the Contractor or any part which includes the Subcontractor's Work, the Contractor shall so notify the Subcontractor in writing and upon written notification the Subcontractor shall immediately suspend the Subcontractor's Work.

In the event of such Owner suspension, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Contract Documents. The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of an Owner suspension and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor.

**10.4 TERMINATION BY OWNER.** Should the Owner terminate the contract with the Contractor or any part which includes the Subcontractor's Work, the Contractor shall so notify the Subcontractor in writing and upon written notification, this Agreement shall be terminated and the Subcontractor shall immediately stop the Subcontractor's Work, follow all of Contractor's instructions, and mitigate all costs.

In the event of such Owner termination, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Contract Documents.

**10.5 SUSPENSION BY CONTRACTOR.** The Contractor may order the Subcontractor in writing to suspend, delay, or interrupt all or any part of the Subcontractor's Work for such period of time as may be determined to be appropriate for the convenience of the Contractor. Phased or interrupted Work when required shall not be deemed a suspension of Work.

The Subcontractor shall notify the Contractor in writing within ten (10) working days after receipt of the Contractor's order of the effect of such order upon the Subcontractor's Work. To the extent allowed the Contractor under the Contract Documents, the Contract Price or contract time shall be adjusted by Subcontract Change Order for any increase in the time or cost of performance of this Agreement caused by such suspension, delay, or interruption.

No claim under this Article shall be allowed for any costs incurred more than ten (10) working days prior to the Subcontractor's notice to the Contractor.

Neither the Contract Price nor the contract time shall be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been so suspended, delayed, or interrupted by the fault or negligence of the Subcontractor or by a cause for which the Subcontractor would have been responsible.

The Contract Price shall not be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been suspended, delayed or interrupted by a cause for which the Subcontractor would have been entitled only to a time extension under this Agreement.

**10.6 WRONGFUL EXERCISE.** If the Contractor wrong-fully exercises any option under this Article, the Contractor shall be liable to the Subcontractor solely for the reasonable value of work performed by the Subcontractor prior to the Contractor's wrongful action, including reasonable overhead and profit on the Work performed, less prior payments made, and attorney's fees.

## ARTICLE 11

## LABOR RELATIONS

(Insert here any conditions, obligations or requirements relative to labor relations and their effect on the project. Legal counsel is recommended.)

Per Article 15 of Subcontract Amendment.

## ARTICLE 12

## INDEMNIFICATION

**12.1 SUBCONTRACTOR'S PERFORMANCE.** To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Contractor (including the affiliates, parents and subsidiaries their agents and employees) and other contractors and subcontractors and all of their agents and employees from and against all claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontract provided that:

(a) any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or for anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder;

(b) such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article 12.

**12.2 NO LIMITATION UPON LIABILITY.** In any and all claims against the Owner or the Contractor (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their agents or employees, by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation under this Article 12 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under worker's or workmen's compensation acts, disability benefit acts or other employee benefit acts.

**12.3 OWNER EXCLUSION.** The obligation of the Subcontractor under this Article 12 shall not extend to the liability of the Owner, its agents or employees, arising out of (a) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (b) the giving of or failure to give directions or instructions by the Owner, its agents or employees, provided such giving or failure to give is the primary cause of the injury or damage.

**12.4 COMPLIANCE WITH LAWS.** The Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances and regulations (hereinafter collectively referred to as "laws") applicable to the Subcontractor's Work including, but not limited to the applicable Federal


© 1991, The Associated General Contractors of America

Acquisition Regulations, agency supplemental regulations, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other laws with which the Contractor must comply according to the Contract Documents.

The Subcontractor shall be liable to the Contractor and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures.

**12.5 PATENTS.** Except as otherwise provided by the Contract Documents, the Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Subcontractor's Work. The Subcontractor shall defend all suits for claims for infringement of any patent rights arising out of the Subcontractor's Work, which may be brought against the Contractor or Owner, and shall be liable to the Contractor and Owner for all loss, including all costs, expenses, and attorney's fees.

**12.6 CERTIFICATIONS.** The Subcontractor agrees to indemnify and hold harmless the Contractor from any liability to the Owner arising out of an alleged violation of certification requirements of the Contract Disputes Act (41 U.S.C. §605), the Prompt Payment Act (31 U.S.C. §3903), or other federal statutes relating to the validity of Subcontractor claims, proposals, applications or requests for payment.

## ARTICLE 13

## INSURANCE

**13.1 SUBCONTRACTOR'S INSURANCE.** Prior to the start of the Subcontractor's Work, the Subcontractor shall procure for the Subcontractor's Work and maintain in force Worker's Compensation Insurance, Employer's Liability Insurance, Comprehensive or Commercial General Liability Insurance on an occurrence basis, and all insurance required of the Contractor under the Contract Documents.

The Contractor and Owner shall be named as additional insureds on each of these policies except for Worker's Compensation.

This insurance shall include contractual liability insurance covering the Subcontractor's obligations under Article 12.

**13.2 MINIMUM LIMITS OF LIABILITY.** The Subcontractor's Comprehensive or Commercial Liability Insurance and Comprehensive Automobile Liability Insurance, as required by Article 13.1, shall be written with limits of liability not less than the following:

A. Comprehensive General Liability Insurance including completed operations

1. Combined Single Limit

Bodily Injury and Property Damage $___*___Each Occurrence
$___*___Aggregate

or

2. Bodily Injury $___*___Each Occurrence
$___*___Aggregate

3. Property Damage $___*___Each Occurrence
$___*___Aggregate

B. Commercial General Liability Insurance

1. Each Occurrence Limit $___*___

2. General Aggregate $___*___

3. Products/Completed Operations Aggregate $___*___

4. Personal and Advertising Injury $___*___

C. Comprehensive Automobile Liability Insurance

1. Combined Single Limit

Bodily Injury and Property Damage $___*___Each Occurrence

or

2. Bodily Injury $___*___Each person
$___*___Each Occurrence

3. Property Damage $___*___Each Occurrence

* Per Article 12 of Subcontract Amendment.

**13.3 NUMBER OF POLICIES.** Comprehensive or Commercial General Liability Insurance and other liability insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability Policy.

**13.4 CANCELLATION, RENEWAL OR MODIFICATION.** The Subcontractor shall maintain in effect all insurance coverage required under this Agreement at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor.

All insurance policies shall contain a provision that the coverages afforded thereunder shall not be cancelled or not renewed, nor restrictive modifications added, until at least thirty (30) days prior written notice has been given to the Contractor unless otherwise specifically required in the Contract Documents.

Certificate of Insurance, or certified copies of policies acceptable to the Contractor, shall be filed with the Contractor prior to the commencement of the Subcontractor's Work.

In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, the Contractor may purchase such coverage and charge the expense thereof to the Subcontractor, or terminate this Agreement.

The Subcontractor shall continue to carry completed operations liability insurance for at least three years after final payment. The Subcontractor shall furnish the Contractor evidence of such insurance at final payment and one year thereafter.


© 1991, The Associated General Contractors of America

**13.5 WAIVER OF RIGHTS.** The Contractor and Subcontractor waive all rights against each other and the Owner, separate contractors, and all other subcontractors for loss or damage to the extent covered by Builder's Risk or any other property or equipment insurance, except such rights as they may have to the proceeds of such insurance; provided, however that such waiver shall not extend to the acts of the Owner listed in Paragraph 12.3.

Upon written request of the Subcontractor the Contractor shall provide the Subcontractor with a copy of the Builder's Risk policy of insurance or any other equipment insurance in force for the Project and procured by the Contractor. The Subcontractor shall satisfy itself to the existence and extent of such insurance prior to commencement of the Subcontractor's Work.

If the Owner or Contractor have not purchased Builder's Risk insurance for the full insurable value of the Subcontractor's Work less a reasonable deductible, then the Subcontractor may procure such insurance as will protect the interests of the Subcontractor, its subcontractors and their subcontractors in the Work, and, by appropriate Subcontractor Change Order, the cost of such additional insurance shall be reimbursed to the Subcontractor.

If not covered under the Builder's Risk policy of insurance or any other property or equipment insurance required by the Contract Documents, the Subcontractor shall procure and maintain at the Subcontractor's own expense property and equipment insurance for portions of the Subcontractor's Work stored off the site or in transit, when such portions of the Subcontractor's Work are to be included in an application for payment under Article 5.

**13.6 ENDORSEMENT.** If the policies of insurance referred to in this Article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

## ARTICLE 14

## ARBITRATION

**14.1 AGREEMENT TO ARBITRATE.** All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, claims which are the subject of Paragraph 6.2, and the claims described in Paragraph 14.2, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. Notwithstanding other provisions in the Agreement, this agreement to arbitrate shall be governed by the Federal Arbitration Act.

**14.2 EXCEPTIONS.** The agreement to arbitrate shall not apply to any claim:

(a) of contribution or indemnity asserted by one party to this Agreement against the other party and arising out of an action brought in a state or federal court or in arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either of the parties hereto or does not consent to such arbitration- or

(b) asserted by the Subcontractor against the Contractor if the Contractor, or Subcontractor through the Contractor, asserts said claim, either in whole or part, against the Owner.

In any dispute arising over the application of this Paragraph 14.2, the question of arbitrability shall be decided by the appropriate court and not by arbitration.

**14.3 INITIAL DISPUTE RESOLUTION.** If a dispute arises out of or relates to this Agreement, or the breach thereof, the parties may endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions, the parties may endeavor to settle the dispute by mediation under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to arbitration. Mediation will be commenced within the time limits for arbitration stipulated in the Contract Documents. The time limits for any subsequent arbitration will be extended for the duration of the mediation process plus ten (10) days or as otherwise provided in the Contract Documents. Issues to be mediated are subject to the exceptions in Paragraph 14.2 for arbitration. The location of the mediation shall be the same as the location for arbitration identified in Paragraph 14.4.

**14.4 NOTICE OF DEMAND.** Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The demand for arbitration shall be made within a reasonable time after written notice of the claim, dispute or other matter in question has been given, but in no event shall it be made when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations, whichever shall first occur. The location of the arbitration proceedings shall be the location of the Project.

**14.5 AWARD.** The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

**14.6 WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, the Subcontractor shall carry on the Work and maintain the Schedule of Work pending arbitration. If the Subcontractor is continuing to perform, the Contractor shall continue to make payments in accordance with this Agreement.

**14.7 NO LIMITATION OF RIGHTS OR REMEDIES.** Nothing in this Article shall limit any rights or remedies not expressly waived by the Subcontractor which the Subcontractor may have under payment bonds.

**14.8 SAME ARBITRATORS.** To the extent not prohibited by their contracts with others, the claims and disputes of the Contractor, Subcontractor and other subcontractors involving a common question of fact or law shall be heard by the same arbitrators) in a single proceeding.


© 1991, The Associated General Contractors of America

## ARTICLE 15

### CONTRACT INTERPRETATION

**15.1 INCONSISTENCIES AND OMISSIONS.** Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of the Subcontractor to so notify the Contractor in writing within three (3) working days of the Subcontractor's discovery thereof. Upon receipt of said notice, the Contractor shall instruct the Subcontractor as to the measures to be taken and the Subcontractor shall comply with the Contractor's instructions.

**15.2 LAW AND EFFECT.** This Agreement shall be governed by the law of the State of California.

**15.3 SEVERABILITY AND WAIVER.** The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

**15.4 ATTORNEY'S FEES.** Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, to collect damages for the breach of the Agreement, or to recover on a surety bond given by a party under this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein.

**15.5 TITLES.** The titles given to the Articles of this Agreement are for ease of reference only and shall not be relied upon or cited for any other purpose.

**15.6 ENTIRE AGREEMENT.** This Agreement is solely for the benefit of the signatories hereto and represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral.

## ARTICLE 16

### SPECIAL PROVISIONS

**16.1 PRECEDENCE.** It is understood the work to be performed under this Agreement, including the terms and conditions thereof, is as described in Articles I through 16 herein together with the following Special Provisions, which are intended to complement same. However, in the event of any inconsistency, these Special Provisions shall govern.

**16.2 SCOPE OF WORK.** All work necessary or incidental to complete the Demolition and Abatement of Building 1400 Work for the Project in strict accordance with and reasonably inferable from the Contract Documents and as more particularly, though not exclusively, specified in: Attachment "A" ~~with the following additions or deletions:~~

**16.3 COMMON TEMPORARY SERVICES.** The following "Project" common temporary services and/or facilities are for the use of all project personnel and shall be furnished as herein below noted:

By this subcontractor;
Per Article 13 of the Subcontract Amendment (attached).

By others;

**16.4 OTHER SPECIAL PROVISIONS.** (Insert here any special provisions required by this subcontract.)

**16.4.1** Subcontractor agrees to comply as part of this subcontract with the Safety Policy of The Korte Company, all rules and regulations of OSHA and any Federal, State and Local governing bodies having jurisdiction over this project. Subcontractor is to supply all scaffold and ladders required to perform their work. Under no circumstances may any employee or representative of this subcontractor use any ladder or scaffold supplied by The Korte Company.

**16.5 CONTRACT DOCUMENTS.** (List applicable contract documents including specifications, drawings, addenda, modifications and exercised alternates. Identify with general description, sheet numbers and latest date including revisions.

Contract Documents as Identified by Attachment "B" of this Subcontract.

THIS SUBCONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal, the day and year first above written.

| | |
|---|---|
| **MEC, Inc.** | **The Korte Company** |
| Subcontractor | Contractor |
| DocuSigned by: | DocuSigned by: |
| By Dale Brubl — Owner (Title) | By Susan D. Bowman — Secretary/Treasurer/CFO (Title) |
| 8E84A2856ED14AC... | C713761F519B403... |
| Date: 2/19/2025 \| 12:37 PM PST | Date: 2/19/2025 \| 13:11 PM PST |




© 1991, The Associated General Contractors of America

## Subcontract Amendment

THIS SUBCONTRACT AMENDMENT is a part of the Agreement between Contractor and Subcontractor, hereinafter termed the "Subcontract." Should any terms of this Subcontract Amendment conflict with or vary from any other terms of the Contract Documents, the terms of this Subcontract Amendment shall control:

1. WORK. The Subcontractor's Work, known as the "Work", is defined in Subcontract or on an attachment to this Subcontract which shall be deemed incorporated herein by reference. Subcontractor shall furnish all labor, materials, supervision, equipment, tools, fixtures, supplies, engineering and other property and services necessary and appropriate to timely and fully prosecute and complete the Work. The Work shall be performed in a good and workmanlike manner, in strict compliance with the Contract Documents and to the satisfaction of Contractor. Subcontractor shall only employ qualified, skilled workers. Subcontractor shall coordinate work with other subcontractors to avoid conflicts. Owner or Contractor will not share in any costs involved in changes required because of conflicts caused by Subcontractor's failure to coordinate work with other subcontractors. Whenever discrepancies exist or questions arise concerning the Contract Documents, the Contractor shall be consulted, and Contractor's interpretation rendered in good faith shall be followed. Anything required or referenced in any of the Contract Documents is a part of the Work. In addition, any materials or work required to carry out the full meaning and intent of the Contract Documents as they relate to the Work is a part of the Work. Should Contractor ascertain in good faith, before or after substantial completion of the Work, that all or a portion of the Work does not conform to the Contract Documents, to good and workmanlike standards, or is otherwise defective or deficient, Subcontractor shall, upon notice from Contractor, promptly accomplish the repair or replacement in accordance with Contractor's good faith determination of the extent of repair or replacement to be performed. Nothing herein shall require Contractor to give formal notice to Subcontractor of any nonconformance. The lack of any complaint concerning nonconforming, unworkmanlike, defective or deficient Work shall not be considered either as an acceptance of the Work or as a waiver of Contractor's rights as set forth in this paragraph. If Subcontractor performs any architectural, engineering or design services as its Work or part of its Work, Subcontractor grants a license to Contractor, Owner and Contractor's other subcontractors to use the drawings, specifications and other design documents prepared for the Project in order to allow the construction and completion of the Project, and to permit the Owner to maintain this information for future purposes, including subsequent Project improvements, repairs, maintenance or remodeling. Pertinent Federal, State and local regulations and requirements are hereby made a part of this contract. Requirements of a governmental authority having jurisdiction shall supersede all other requirements. Subcontractor shall bear all costs and damages due to improperly installed work.

2. JOB CONDITIONS & DATA. Subcontractor represents that it has carefully examined all Contract Documents, and acknowledges that each of the Contract Documents is available for further inspection at either Contractor's jobsite office or at such other office as Contractor may designate. Subcontractor represents that it has become fully acquainted with: the nature and location of the Work; the general and local conditions, including those bearing upon availability of labor, utilities and access; union jurisdictions; weather conditions; ground and subsurface conditions; existing improvements; obstructions; elevations; physical conditions of every nature and kind; and the probability of increases in taxes, material and equipment prices, and wage rates.

3. SAFETY PROGRAM. The latest edition of Contractor's written Safety Operating Statement in effect at the signing of this Subcontract is incorporated into the Subcontract by specific reference. Subcontractor agrees to comply with all rules and regulations of OSHA and any Federal, State and local governing bodies having jurisdiction over this Project. In the event of any conflict or discrepancy between Subcontractor's safety program and Contractor's safety program, Subcontractor shall promptly bring the discrepancy or conflict to the attention of the Contractor, and Contractor's good faith decision regarding which safety program shall govern in that particular instance shall be final and binding. Contractor's pre-existing Drug and Alcohol Testing Policy shall apply to this federal project consistent with federal law. For this purpose, to maintain a drug free workplace in accordance with the intent of the Federal Drug-Free Workplace Act of 1988 and considering the fact the Contractor is not the employer of any of the Subcontractor's employees, the Contractor reserves the right, before any worker employed by Subcontractor may enter or re-enter the Project premises, to require the worker to take a drug and alcohol test. The employer shall pay the costs of each such requested test. If either (a) the Subcontractor's employee refuses to take the drug and alcohol test or (b) the Subcontractor's employee does take the test and the test results are positive, Contractor reserves the right to decline that particular worker permission to enter or re-enter the Project premises, and in such an event, Subcontractor, at Subcontractor's expense, shall assign another employee to this Project to replace the Subcontractor's employee who is no longer authorized to enter onto the Project premises. A copy of Contractor's Drug and Alcohol Testing Policy is available to any of Subcontractor's Project employees upon request to Contractor.

4. ACCEPTANCE OF WORK & CONDITIONS. If any of Subcontractor's Work is dependent on the work of Contractor, another subcontractor or another contractor, or on the adequacy of existing conditions, Subcontractor shall carefully and thoroughly examine such work and conditions to determine its adequacy prior to commencing the Work. Commencement of the Work without notice to Contractor of any deficiency or inadequate conditions which should have been discovered upon such an examination shall be deemed Subcontractor's acceptance of responsibility for such Work and conditions.

5. SCHEDULE. The Schedule of the Work is subject to the Contractor's Project schedule. If the Project schedule requires earlier completion than the Schedule of the Work, Subcontractor shall complete consistent with the Project schedule. Subcontractor shall, at its own expense, keep abreast of the Project schedule and shall plan, coordinate with other Subcontractors, and perform the Work in a manner consistent with the Project schedule. Subcontractor shall diligently prosecute and complete the Work so as not to impede, delay or hinder the work of others or the progress of the Project, and shall attend Project meetings as requested by Contractor. Subcontractor shall furnish to Contractor such planning, scheduling and delivery information as Contractor may require. Submittals shall be furnished consistent with the progress of the Project and as reasonably directed by Contractor.

6. INDEMNITY. Subcontractor shall be fully liable for, and shall enter, defend, indemnify and hold Contractor harmless from all liability, costs, expenses and damages, including attorney's fees, liquidated damages imposed on Contractor and any delay and disruption damages claimed against Contractor, attributable in full or in part to the failure of Subcontractor to prosecute the Work consonant with the Project schedule. To the extent directed by Contractor, the Subcontractor shall work overtime and increase manpower to mitigate the delay or disruption, and all such extra expense shall be borne by Subcontractor. The foregoing is in addition to all remedies available to Contractor under this Subcontract or at law. Subcontractor shall indemnify and hold Contractor harmless from all liability, expense, costs and fees, including attorney's fees, arising out of any claim, spurious or otherwise, that Subcontractor has violated any safety obligation or any federal, state or local laws, ordinances or regulations relating to health or safety, including, without limitation, any provision of or regulations promulgated under the Occupational Safety & Health Act (OSHA). If the governing law would void an indemnification obligation except

to the extent the loss, damage or cost is due to the negligence or fault of Subcontractor, or any of its employees, agents or subcontractors, then Subcontractor's indemnification obligations in this Subcontract shall be construed to extend only to the maximum extent permitted by law. Nevertheless, if any such indemnification provision is enforceable for insurance purposes while otherwise void unless construed in accordance with the foregoing sentence, the provision shall, for insurance purposes, be construed as written. In addition, Subcontractor shall indemnify, defend and hold Contractor harmless from (a) any and all claims and causes of action by any subcontractor or supplier, directly or indirectly, of Subcontractor for a mechanic's lien, materialman's lien or other lien, for recovery under a payment bond or other surety bond posted by Contractor, or for other relief from Contractor, Contractor's surety or the Owner, and (b) from any and all losses and damages, including attorneys' fees and other defense costs incurred by Contractor, Contractor's surety or Owner, relating to or resulting from such a claim or cause of action, if the claim or cause of action is based on labor, materials, equipment, engineering, services, supervision or project management furnished by the claimant for or at the request of Subcontractor or any of Subcontractor's subcontractors or suppliers. Contractor has the right to reach a good faith settlement of any such claim covered by the immediately above indemnity, and the amount paid in settlement shall be considered recoverable damages under the immediately above indemnity.

7. TERMINATION FOR DEFAULT & SUPPLEMENTING THE WORK. Should Contractor determine in good faith that Subcontractor has: (a) failed or is unable to diligently and timely commence, prosecute or complete the Work in a good, workmanlike manner and in strict conformance with the Contract Documents, (b) failed to devote adequate manpower to maintain progress consistent with the Project schedule, or (c) violated any other provision of this Subcontract, then Contractor may, upon giving seventy-two (72) hours' advance written notice to Subcontractor of the nature of the default, elect to terminate this Subcontract for default. Only one such notice is required. Such notice shall be deemed delivered to Subcontractor when one of the following events occurs: (a) the notice is sent by mail to Subcontractor's last known address; (b) the notice is sent by facsimile to the last facsimile number of Subcontractor known by Contractor; (c) the notice is sent by e-mail to an officer or agent of Subcontractor; or (d) the notice is in fact delivered by any means to an officer or agent of Subcontractor. Prior to the expiration of the above-mentioned seventy-two (72) hour notice period, Contractor may, in its sole discretion, take such steps Contractor deems appropriate in preparing for taking over all or a portion of the Work, or in preparing to supplement the performance of all or a portion of the Work. In the event of a termination for default, Contractor may elect to take over or cause others to take over the Work, or any part thereof, together with any of Subcontractor's tools and equipment, and any appliances, materials and supplies specifically ordered or fabricated for the Project by Subcontractor or any of its subcontractors and suppliers, whether at the Project or elsewhere, and may complete such Work for the account of Subcontractor by whatever method Contractor deems expedient, including upon a cost-plus or time and material basis. Subcontractor shall be liable for all costs and expenses to properly complete the Work and to cure the default(s) of Subcontractor, for all damages, including delay damages, resulting from the default(s) or default termination, and for all expenses and fees of Contractor, including attorney's fees, to enforce its rights under this paragraph. In lieu of terminating the Subcontract for default, Contractor may elect, without prejudice to any other rights and remedies, to expedite the performance of the Work and to take steps to cure one or more of the defaults by authorizing others and/or its own forces to perform a portion of the Work, and all costs and expenses related thereto, both direct and indirect, shall be backcharged to Subcontractor. A termination for default shall be treated as Contractor supplementing the performance of the Work if Contractor, through an officer or the project manager of Contractor and after the above-mentioned seventy-two hour period, authorizes Subcontractor to perform a portion of the Work. A termination for default shall be one for without cause if it is ultimately determined that Contractor lacked a good faith basis to terminate for default.

8. RETAINAGE. From each progress payment, Contractor shall withhold as standard retainage until final payment the lower of: (a) 10% of the amount otherwise payable to Subcontractor and (b) the maximum retention permitted by law. Contractor may also withhold as additional retainage, until the reasons for additional withholding have been removed, such sums as Contractor, in the exercise of reasonable judgment, deems adequate to protect against: (a) defective Work not remedied; (b) third party claims filed or reasonable evidence indicating the probable filing of such claims, including any notice or filing by a subcontractor or supplier of Subcontractor of a mechanic's lien or bond claim; (c) the failure of Subcontractor, or any of its subcontractors or suppliers, to timely pay for labor, material and equipment for this Project; (d) reasonable evidence that the Work cannot be completed for the unpaid balances of the Subcontract Sum; (e) damage to Contractor, Owner or another subcontractor for which the Subcontractor may be responsible; (f) reasonable evidence that the Work will not be completed within the Subcontract Time, and that the unpaid balance will not be adequate to cover the estimated damages due to the anticipated delay; (g) a good faith belief by Contractor that grounds exist for insecurity concerning Subcontractor's ability or willingness to later properly perform or satisfy any obligation required under the Contract Documents; and (h) the failure to perform in strict accordance with the Contract Documents. In no event shall any standard or additional retainage be due Subcontractor if Contractor determines in good faith that there exist grounds for believing that Subcontractor has not properly performed, or may not later properly perform or satisfy, any obligation required under the Subcontract Documents, including, without limitation, satisfying warranty responsibilities and maintaining required insurance.

9. PAY APPLICATIONS & PAYMENTS. Each pay application shall be submitted to Contractor sufficiently in advance to permit Contractor to include same in Contractor's next pay application. In the absence of a timely submitted pay application from Subcontractor, Contractor may, if acceptable to the Owner, submit an estimate for that portion of the Work which would have been covered by a timely submitted pay application, and in such an event, Subcontractor shall have no claim concerning the adequacy of Contractor's estimate. Any Schedule of Values furnished by Subcontractor shall be a guide only for evaluating pay applications, and Contractor may use such factors in determining the value of the Work performed as Contractor determines to be reasonable. Each pay application shall be submitted on Contractor's standard form and contain such information and support as Contractor may require including paid invoices, statements and evidence to substantiate the amount requested. In no event shall the proper amount to be paid to Subcontractor for that portion of the Work covered by the progress or final pay application be due until and unless the Contractor has received payment therefor from the Owner. Contractor and Subcontractor recognize and agree that: (a) payments required under the subcontract, withholding of payments, retention, and notifications relating to payment, withholding, or retention are subject to the requirements of the Federal Prompt Payment Act, and (b) where the federal act is inconsistent with any state statute on the subject, the requirements of the federal statute and its regulations shall govern.

10. DELAY. Should Contractor unduly interfere with or disrupt Subcontractor's Work or otherwise actively and materially delay Subcontractor's performance, Subcontractor may make claim for the reasonable additional labor, material and equipment costs incurred by Subcontractor solely by reason of the delay or disruption, without allowance for overhead or profit, provided Subcontractor furnishes to Contractor timely notice of the claim in accordance with the Contract Documents. In addition to other requirements, Subcontractor shall

furnish to Contractor written notice of the claim for compensable delay within forty-eight (48) hours of the commencement of the delay or disruption, specifying the nature of the event causing the delay or disruption and the actual and probable consequences thereof. Except as provided above, Subcontractor shall not be entitled to any damages for delay, disruption or interference regardless of cause or duration. The sole remedy for any delay or disruption beyond Subcontractor's reasonable control and not attributable to the active interference or undue delay of Contractor shall be an extension of the Subcontract Time. Subcontractor shall furnish to Contractor written notice of a delay beyond Subcontractor's reasonable control within forty-eight (48) hours of the commencement of the event giving rise to the delay, specifying the nature thereof and the actual and probable consequences thereof.

11. TERMINATION WITHOUT CAUSE. Contractor may terminate this Subcontract without cause upon giving Subcontractor seventy-two (72) hours advance notice of the termination. In such event, Subcontractor shall immediately cease and terminate the performance of the Work, and the Subcontract Sum shall be automatically amended to equal the following: (a) Subcontractor's reasonable pre-termination costs (without markup) for all direct labor, materials, equipment and project supervision furnished in the performance of the Work by Subcontractor at the Project site and at any off-site fabrication facility approved in writing by Contractor; (b) Subcontractor's reasonable direct costs (without markup) for the post-termination demobilization from the Project site; (c) the amounts reasonably charged to Subcontractor by suppliers as cancellation charges; and (d) fifteen percent (15%) on the sum of subparts (a),(b) and (c) above as the agreed lump sum amount to cover (i) all other costs, indirect or otherwise, plus (ii) overhead and profit. Subparts (a), (b) and (c) above shall not include any lost profits, lost rebates, estimating or bid preparation costs, home office overhead, cancellation charges which could have been avoided through the exercise of best efforts, the costs to correct any of the Work which was found to be deficient or nonconforming, or the costs incurred by Subcontractor to cure any other Subcontractor default.

12. INSURANCE. Except where the Contract Documents require greater coverage in terms of coverage limits, covered risks or otherwise, Subcontractor shall procure and maintain the following insurance for the Project:

A. Worker's Compensation: Statutory limits.
B. Employer's Liability: $1,000,000 minimum.
C. Comprehensive General Liability (including contractual liability, products liability and completed operations):
   1. Bodily Injury and Property Damage:
      $1,000,000 each occurrence
      $2,000,000 aggregate for the Project
   2. Personal Injury:
      $1,000,000 each occurrence
      $2,000,000 aggregate for the Project
D. Comprehensive Automobile Liability:
   1. Bodily Injury:
      $1,000,000 each person
      $1,000,000 each occurrence
   2. Property Damage:
      $1,000,000 each occurrence
   3. $1,000,000 combined Single Limit
E. Umbrella Liability:
   $2,000,000 each occurrence
   $2,000,000 aggregate
F. Professional Liability Insurance $3,000,000 (applicable only if the Subcontract calls for Subcontractor to furnish or perform design-build services, design services, independent material testing/inspection, independent building envelope testing/inspection, geotechnical or professional licensed surveying/layout services).
G. Pollution Liability: $2,000,000 Each Claim/Occurrence and Aggregate. Coverage should include third party liability, costs of clean-up, remediation and removal of hazardous materials and for the defense of any related legal action. If coverage is claims made, should remain in effect for three (3) years following completion of the project and include a retroactive date that precedes the contract date or earlier.

Owner, Contractor and Others as required by written contract shall be expressly listed as an additional insured on the Subcontractor's Commercial General Liability ("CGL") policy, on the Umbrella Liability ("Umbrella") policy, and on the Pollution Liability policy. The certificates of insurance are required before commencement of the Work. Subcontractor or its design subconsultant(s), as the case may be, shall maintain professional liability insurance with at least the above limits during the Project and for the five year period following the completion of the Project. All liability policies, except the professional liability insurance, shall be underwritten on an occurrence basis. Subcontractor shall also have the CGL and Umbrella policies endorsed so that the coverage to Contractor and Owner as an additional insured is primary and non-contributory with respect to insurance carried by the additional insureds. Contractor's coverage as a named insured on its own CGL and Umbrella policies, if triggered by Contractor, shall be excess to the coverage afforded to Contractor as an additional insured. Each additional insured endorsement shall provide Contractor coverage for an occurrence arising out of the work or operations performed by or for Subcontractor, regardless of whether the occurrence is during or after performance of the Work. Subcontractor shall provide ENDORSEMENT FORM CG 2010 11 85, or CG 20 10 07 04 and CG 20 37 07 04, OR ITS EQUIVALENT at no expense to Contractor naming Owner, Contractor and Others as required by written contract as additional insureds, CGL policy number typed on endorsement, and must be signed by carrier or authorized representative. Subcontractor shall maintain the CGL policy naming Owner, Contractor and Others as required by written contract as additional insureds for at least 3 years following completion of the Project or for such longer period, if any, as prescribed in the Subcontract Documents. All insurance policies to be maintained by Subcontractor or its design subconsultant(s) as required under the Contract Documents shall, to the maximum extent enforceable under the law, contain a clause waiving subrogation against Contractor and Owner. The above-mentioned policies shall contain a provision that coverages afforded under the policies will not be cancelled or materially altered or not renewed until at least thirty days prior written notice has been given to the Contractor. Furthermore, the policies shall contain an endorsement with wording consistent with FAR Clause 52.228-5 Insurance - Work on a Government Installation: "Any cancellation or material change adversely affecting the Government's interest shall not be effective (1) for such period as the laws of the State in which this contract is to be performed prescribe, or (2) until 30 days after the insurer or the Contractor gives written notice to the Contracting Officer, whichever period is longer. Neither the failure of Subcontractor to furnish a certificate of insurance meeting the

requirements of the Subcontract Documents nor the failure of Contractor to monitor or determine whether Subcontractor has met the insurance requirements of the Subcontract Documents shall relieve Subcontractor from its responsibility for fully complying with all insurance requirements. At least 30 days before the end of a policy period, Subcontractor shall furnish a certificate of insurance reflecting that the insurance coverages as required herein have been renewed.

13. TEMPORARY FACILITIES & UTILITIES. Except to the extent the Contract Documents specifically provide otherwise, Subcontractor shall at its expense make arrangements for temporary power, water and other temporary services and utilities that Subcontractor may require. Subcontractor may utilize a portion of the Project site for storage only insofar as designated by Contractor and Owner. Until final completion of the Work, Subcontractor bears full risk of loss for its Work and for its materials, equipment and tools, except to the extent the loss is either caused solely by Contractor's negligence or is covered by insurance maintained per the Subcontract Documents or the Contract Documents.

14. PARTIAL OCCUPANCY. Occupancy or use of a portion or portions of the Work by Owner or Contractor shall not constitute acceptance of any part of the Work that does not comply with the requirements of the Contract Documents.

15. HARMONY. Subcontractor shall employ only employees who work in harmony with others working at the Project. Subcontractor will, insofar as may be permitted by law, employ union labor. In the event any dispute should arise between the trades or crafts employed on the Project as to which trades or crafts should be assigned to do any particular portion of the Work, Subcontractor agrees to take all action necessary to properly resolve the dispute. Subcontractor shall also be in compliance with Executive Order 13496, 29 CFR Part 471, Appendix A to subpart A , and the rules relating to that Executive Order for posting notification to employees of their rights under the National Labor Relations Act to organize, to be represented, and to bargain. For more information, go to http://www.dol.gov/olms/regs/compliance/EO13496.htm

16. BACKCHARGES AND CREDITS. Contractor may backcharge Subcontractor for the labor, materials, equipment, supervision and services, including a reasonable markup, rendered or furnished by Contractor to perform, or to assist in the performance of a portion of the Work. Contractor may set off or credit against amounts otherwise payable to Subcontractor all amounts due from Subcontractor to Contractor, whether arising from this Project or otherwise.

17. EQUAL EMPLOYMENT. Contractor is an equal opportunity employer. Subcontractor shall comply with all applicable fair employment practices, equal employment opportunity provisions and regulations, including Executive Order 11246 - Section 202 paragraphs 1 to 7, and similar laws, regulations, ordinances and goals of each governmental authority with jurisdiction over the Project. Subcontractor shall also comply with the provisions of 41 CFR 60-1.4 and Far Clauses 52.222-26 and 52.222-27. Any reasonable accommodations requests should be addressed to The Korte Company project supervisory personnel or EEO officer. Also, immediately notify The Korte Company of all allegations of Equal Opportunity Violations or contact with any agencies regarding any Equal Opportunity or Affirmative Action.

18. BORROWED TOOLS, EQUIPMENT & EMPLOYEES. Subcontractor is to supply all scaffold and ladders required to perform the Work. Under no circumstances may Subcontractor borrow or use any of Contractor's tools, equipment (including a ladder or scaffold), or personnel without first securing Contractor's permission and secondly, expressly listing Contractor as an additional insured on Subcontractor's CGL Policy and on the Umbrella Policy. Subcontractor shall assume full risk of loss and damage resulting from use of any such tools, equipment or personnel. Contractor's personnel, during the period borrowed by or working for Subcontractor, shall be considered Subcontractor's employees. Subcontractor shall indemnify and hold Contractor harmless from all liabilities, damages and expenses arising out of Subcontractor's use of Contractor's tools, equipment or personnel.

19. PAYMENT & PERFORMANCE BONDS. Each performance or payment bond posted by Subcontractor, if any, shall remain in full force and effect in the event of any change in the Work or adjustment in the Subcontract Sum and/or Subcontract Time, and no notice of any such change or adjustment need be given to any surety.

20. THIRD PARTY BENEFICIARY. Nothing herein affords any third party beneficiary rights to any person or entity against Contractor.

21. ACTION AGAINST OWNER. To further clarify and supplement Paragraph 6.2, in the event of any dispute or claim arising out of or relating to a claimed error or omission in the Contract Documents, a claimed event of delay, disruption or interference caused by the Owner, or any other occurrence for which the Owner is or may be obligated under the prime contract with Contractor to compensate Contractor in money, time or both, Subcontractor agrees to promptly provide all necessary notices and to take all appropriate action so that Contractor may timely assert the claim against the Owner, and Subcontractor agrees to be bound by the determination of that claim or dispute resulting from:

(a) a settlement made in good faith by the Contractor with the Owner;
(b) the final decision of the claim or dispute made by the Contracting Officer or similar official for the Owner, if Contractor determines in good faith that pursuit of an appeal of that decision would not likely result, when the probable fees and expenses of that appeal are considered, in a more favorable outcome; or
(c) the decision made by the administrative board or court of competent jurisdiction, if Contractor determines in good faith that an appeal or appeals should be pursued.

In no event shall Contractor's liability to Subcontractor for such a claim or dispute exceed the difference between the amount (if any) determined in accordance with the foregoing to be paid by Owner to Contractor and Subcontractor's proportionate amount of Contractor's fees and expenses to prosecute the claim or dispute. If Contractor elects to pursue such a claim or dispute against the Owner, Subcontractor shall fully cooperate with Contractor, including but not limited to furnishing to Contractor all documents, statements, witnesses and information Contractor requires for that purpose. Subcontractor shall be liable to Contractor for a proportionate share of the attorney's fees and claim expenses based on the amount of Subcontractor's claim in relation to the amount of Contractor's claim against the Owner for the same event. Subcontractor shall receive a proportionate recovery of the settlement or award (if any), after deducting Subcontractor's proportionate amount of Contractor's fees and expenses to prosecute the claim or dispute.

If Contractor elects at any time not to pursue, or not to continue to pursue, recovery against the Owner in connection with such a claim or dispute, Contractor shall so notify Subcontractor in writing, and Subcontractor may thereafter, at its sole option and expense, prosecute the claim or dispute in Contractor's name against Owner provided Contractor is kept informed on a timely basis of the activity in prosecuting the claim or claims, and Contractor's approval of any action requiring same is obtained from Contractor in writing, which approval shall not be unreasonably withheld.

22. LIQUIDATED & DELAY DAMAGES. In addition to the assessment against Subcontractor, as authorized by Paragraph 6.5, of a proportionate share (which may be 100% if Contractor so determines in good faith based on the information readily available to Contractor on the cause or causes for the delay) of Owner-assessed liquidated damages (if any), Subcontractor shall be liable to Contractor for all other damages due to delays, disruption or hindrance caused by Subcontractor or any of Subcontractor's subcontractors, suppliers or employees, including Contractor's extended labor, supervision, equipment and field overhead costs and expenses, Contractor's damages for loss of productivity, and a portion of Contractor's home office overhead based on the Eichleay formula.

23. ARTICLE 10 OPTION. Should Contractor wrongfully elect to exercise any option or right granted under Article 10 of the Subcontract, Contractor's liability shall be limited in such an event solely to the reasonable labor, material, supervision and equipment costs and expenses incurred by Subcontractor as a direct result thereof.

24. INDEMNITY: Subparagraph 12.1(a) is modified to read as follows:
(a) any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property, including the loss of use resulting therefrom, if caused in whole or in part, or if alleged to have been caused in whole or in part, by any negligent or wrongful act or omission of Subcontractor's agents, employees, subcontractors and suppliers, regardless of whether it is caused in part by the negligence or other fault of a party indemnified hereunder; provided, however, that the foregoing obligation to indemnify, hold harmless and defend shall not apply: (a) to the extent the claim arises out of, pertains to, or relates to the active negligence or willful misconduct of the Contractor, any of the Contractor's subcontractors other than Subcontractor, or any of their respective agents or employees, or any person or firm other than Subcontractor for whom Contractor is legally responsible, or (b) to the extent of defects in design furnished by such person or firm other than Subcontractor for whom Contractor is legally responsible, or (c) to the extent the claim does not arise out of the scope of Subcontractor's Work.

25. MEDIATION AND ARBITRATION: Contractor and Subcontractor acknowledge that this is a contract involving substantial interstate commerce and each party further warrants that the interstate commerce connection was in their contemplation as of the time of the making of this subcontract. The arbitration provisions shall be governed by the Federal Arbitration Act. In the event of a mediation or arbitration involving Contractor and Subcontractor, the mediation or arbitration shall be held, unless the parties otherwise agree in writing, in or near the city referenced in Contractor's address on the face page of the parties' contract or in or near the place of the Project, as Contractor in its sole discretion may select. Contractor and Subcontractor agree that any claim or dispute between Contractor and Subcontractor may be joined with or consolidated into any formal dispute resolution proceeding involving Contractor and another party if Contractor determines in good faith that: (a) there exists a common issue of fact or law, and (b) joinder or consolidation is both permissible and practicable.

26. SUBMITTALS: In addition to the other provisions governing submittals, Subcontractor agrees that insofar as a Subcontractor submittal responds to a performance specification or to the performance aspects of a mixed performance-design specification, Subcontractor shall be solely responsible for developing that submittal in full compliance with all relevant standards of practice, including current codes, regulations, and industry standards. Contractor's review of a Subcontractor submittal with or without making any notations or objections shall not relieve Subcontractor from its obligation to furnish and install the Work strictly in accordance with the Subcontract Documents.

27. QUALITY MANAGEMENT PLAN: The Contractor anticipates developing a Quality Management Plan. The plan will include as a minimum:

a. A description/organizational chart of the quality management organization.
b. The number, classifications, qualifications, duties, responsibilities and authorities of personnel.
c. The method of quality control specifically dedicated to the First and Last Five Percent of an assigned project.
d. The method of cost estimating review, design review proposed to assure that the cost estimate and design meets all contract intent and specific requirements.
e. Procedures for processing, reviewing, and approving shop drawings, samples, certificates, and other submittals.
f. Construction Quality Control (CQC) activities to be performed, including those of professional consultants/subconsultant's, subcontractors, off-site fabricators and suppliers. Each phase of CQC; preparatory, initial and follow up as a hereinafter defined; will be covered for each separable activity.
g. Control testing procedures.
h. Documentation format for CQC activities and testing.
i. Performance testing for acceptance of all facility electrical, mechanical and other systems.

The Subcontractor shall abide by the requirements of Contractor's Quality Management Plan.

28. CONTRACTOR FURNISHED INFORMATION: All documents and information furnished by the Contractor shall remain the Contractor's property. Any information and data gained by the Subcontractor, and reports, drawings, charts, and photographic work generated in performing the requirements of this Subcontract remain the sole property of the Contractor. The Subcontractor shall not disclose or duplicate any information furnished by the Contractor, except as authorized in writing by the Contractor. Any information or data provided by the Contractor shall be returned to the Contractor upon request or when no longer needed to perform this Subcontract. Except as may be necessary for the performance of this Subcontract, Subcontractor shall not use or disclose information concerning the activities of the Contractor without Contractor's prior written consent.

29. PROHIBITION AGAINST PUBLIC DISCLOSURE OF WORK UNDER THIS CONTRACT:

a. Public disclosure of information derived from or knowledge gained as a result of work under this contract whether by press release, word of mouth, written correspondence or any other means is prohibited without the advance written consent of the Contractor.

Request for authority to release such information must be made in writing and submitted by the Subcontractor to the Contractor. Request must be documented with sufficient evidence to justify requested release as being in the best interest of the public welfare. Final determination with regard to the necessity of public disclosure of such information remains solely with the Contractor.

b. As used in this clause, the prohibition against "public disclosures" is defined to include a prohibition against disclosures to any governmental agency or unit other than the contracting agency as well as any individual or group of individuals outside of the contracting agency.
c. Subcontractor agrees to insert this clause in any and all subcontracts hereunder relating to performance of work under this contract.

30. ALL ITEMS TO BECOME PROPERTY OF THE CONTRACTOR: Title to all data and information developed and furnished by the Subcontractor, together with all deliverable data, reports, documentation and all other information pertaining to the Work to be performed pursuant to this Subcontract, including any copyright, shall become property of and remain with the Contractor upon completion of the Work. The Contractor shall have the full right to use each of these for its purposes without compensation to or approval from Subcontractor. The Contractor shall have unlimited access to and the right to make copies of the above-mentioned items.

31. SCHEDULED OUTAGES: Unless otherwise specified, all outages, including but not limited to utility interruptions and road closures, shall be of as short in duration as possible and shall be scheduled by the Subcontractor in writing, as far in advance as possible with the Contractor. In no case shall scheduling occur less than 14 calendar days prior to the required outage. The Subcontractor's outage request shall include the following:

a. Type of utility, access or service to be disrupted.
b. Areas and/or facilities affected.
c. Expected duration of outage.
d. Date of proposed outage.
e. Names of authorized personnel.
f. Point of contact and telephone numbers.

The Subcontractor shall obtain in writing from the Contractor a statement of schedule, giving the permissible times of outages for particular installations or activities and the maximum time allowed for each outage. Any utility outage expected to exceed one (1) hour in duration shall be scheduled for the weekend (Saturday/Sunday) and shall not exceed six (6) hours in duration. Any utility outage scheduled during the week (Monday through Friday) shall not exceed one (1) hour in duration. No outage shall occur until written approval is received from the Contractor. The Subcontractor shall strictly observe such schedules and will be held responsible for any violations. The Subcontractor shall include with each outage request, a list or bill of materials and equipment that will be used during said outage. The Subcontractor will be solely responsible for ensuring that all materials and equipment will be on hand and ready for use during any scheduled outage.

Neither the Contractor's review, approval or acceptance of, nor payment for, any of the services required under this Subcontract shall be construed to operate as waiver of any rights under this Subcontract, and the Subcontractor shall be and remain liable to the Contractor in accordance with applicable law for all damages to the Contractor caused by the Subcontractor's negligent acts or omissions in connection with designs, drawings and specifications furnished under this Subcontract or arising from Subcontractor's performance under this Subcontract.

32. RIGHTS IN SHOP DRAWINGS: The term "shop drawings' for construction means drawings submitted by the Subcontractor or any lower-tier subcontractor, showing in detail the proposed fabrication and assembly of equipment elements and installation (i.e., form, fit and attachment details) of materials or equipment. The Contractor may obtain, duplicate, use and disclose in any manner and for any purpose, shop drawings delivered under this Subcontract. This clause, including this paragraph, shall be included in all subcontracts hereunder at any tier.

33. PERMITS AND LICENSES: Subcontractor shall obtain and pay for all permits and licenses, and shall give notice, comply with all laws, rules and regulations bearing on the Work. Subcontractor shall make arrangements for permits and inspections. Upon completion of the Project, Subcontractor shall furnish to the Contractor a certificate of approval from the inspection authorities as required.

34. RECORD DRAWINGS: Subcontractor shall maintain Record Drawings and Specifications during the project. Maintenance of the electronic As-Built set on designated platform (Procore unless otherwise specified) by the Subcontractor shall be a precedent to payment Subcontractor's monthly Application for Payment. The Subcontractor shall update electronic Procore as-built document set immediately upon substantial changes to contract documents. As the Work progresses, Subcontractor shall note the actual installed location of hidden or concealed work, any modification to the layout or arrangement of the Work, and the actual product installed. The Subcontractor is responsible for incorporating all hard copy as-built documents into Procore for designer review.

35. GUARANTEE: Except and to the extent the Subcontract Documents specify any longer warranty period, Subcontractor shall guarantee workmanship and materials for a period of one (1) year from final acceptable by the Owner. Subcontractor shall furnish the necessary labor and materials, at no cost to the Contractor, to replace any defective materials or workmanship during the guarantee period. This section does not address , waive or impair Contractor's other rights and remedies for a defect or deficiency in the Work appearing before, on, or after the date occurring one year from final acceptance by Owner.

36. TRAINING: Subcontractor shall furnish all Operation and Maintenance Manuals and shall train Owner's personnel in the proper operation of the equipment and systems forming a part of the Work.

37. TESTING OF SYSTEMS: Subcontractor shall furnish all reports on testing of equipment and systems, as required, to the Owner.

38. CLEAN-UP: Subcontractor is responsible for daily clean-up to dumpster or as otherwise directed by Contractor.

39. RELEASE OF CLAIM: For each application for payment submitted by Subcontractor to Contractor, Subcontractor shall be deemed to be fully and completely waiving, relinquishing and releasing any and all claims and causes of action, whether sounding in contract, in tort or otherwise, which Subcontractor had or may have had against Contractor except and only to the extent of any claim or cause of action then accrued with respect to which the Subcontractor has provided written notice thereof to Contractor promptly after the Subcontractor knew or should have known about the claim or cause of action. Nothing in this paragraph shall be construed to preserve or resurrect a claim or cause of action Subcontractor has otherwise waived or relinquished.

40. CONDITIONAL ASSIGNMENT: Subcontractor shall include in each subcontract and purchase order for this Project a provision conditionally assigning to Contractor all of the Subcontractor's rights under the subcontract or purchase order, and the assignment shall become effective if Contractor terminates this Subcontract and notifies the subcontractor or supplier to Subcontractor, as the case may be, that Contractor is exercising its rights under the conditional assignment.

41. SEVERABILITY. The parties agree that if any provision in the Subcontract Documents is found or declared to be invalid, that provision shall be deemed stricken without affecting the enforceability of any of the remaining provisions of the Subcontract Documents. All such remaining provisions shall be fully enforceable.

42. WHEN SUBCONTRACTOR IS A DESIGN/BUILDER: If Subcontractor's Work includes or consists of furnishing or providing architectural, engineering or design services, the following shall apply: All such design services shall be performed by one or more duly qualified and licensed design professionals or firms, and such services shall be performed in accordance with the professional standard of care governing the performance of like professionals for a project similar in scope and complexity. This shall include full compliance with all governing building codes (including without limitation all handicap accessibility codes, seismic codes, electrical codes, plumbing codes, fire codes, and fire sprinkler codes), rules, regulations, laws and orders of every governmental agency or governmental entity having jurisdiction over the Project. Any Owner-directed or Contractor-directed standards affecting the architecture or design of the Project and forming a part of the contract documents between the Owner and Contractor are hereby incorporated by reference and made a part of this Subcontract. To encourage the proper development of conceptual design, preliminary design and construction design documents satisfying the requirements of the contract documents, design representatives of the Subcontractor or Subcontractor's subconsultant(s) shall meet from time to time with representatives of Contractor and Owner as may be requested to address design development and to monitor progress in the resolution of then pending design issues. Subcontractor shall take all necessary steps and sign any documents necessary so that drawings, specifications and other design documents so prepared become the property of Contractor or Contractor's designee and that Contractor or Contractor's designee has all copyright rights in those documents. Should Subcontractor contract for any design services, the contract shall be in a form acceptable to Contractor and Subcontractor, and Subcontractor shall require its contract with the design professional or design firm to include the following: (a) a provision stating that Contractor and Owner are third-party beneficiaries of the contract obligations of the design professional or design firm; (b) a provision requiring the design professional or design firm to maintain professional liability insurance with limits of $1,000,000 per claim for the period ending five years from completion of the Work for the Project unless the contract documents between Owner and Contractor require larger limits or a longer period of coverage; and (c) a conditional assignment provision to the effect that if this subcontract is terminated, Contractor has the right to elect to step in as an assignee to one or more contracts with the design professionals or design firms in order to continue to receive the performance of the design services for the Project as Contractor, in its discretion, as Contractor determines.

43. IMMIGRATION REFORM & CONTROL. Contractor is committed to ensuring that individuals who work on the Project have established their eligibility to be employed in the United States. Each Subcontractor shall comply with the requirements of Immigration Reform & Control Act (IRCA), including the requirements that U.S. employers, among other things, verify the eligibility of its employees employed in the U.S. and that U.S. employers timely secure completion of the I-9 forms and process. Contractor reserves the right to terminate for default this Subcontract if Subcontractor does not comply with these or any other Federal, state and or local laws and regulations. In addition, Contractor will also pursue any and all damages to which Contractor may be entitled, resulting from the Subcontractor's failure to comply with any such laws or regulations.

44. EMPLOYMENT ELIGIBILITY VERIFICATION (E-Verify). Subcontractor must comply with Employment Eligibility Verification Clause (FAR 52-222-54) using the E-Verify system administered by the Department of Homeland Security, US Citizenship and Immigration Services. The clause requires enrolling in E-Verify and using E-Verify to verify the eligibility of all new hires, and those employees assigned to perform any of the Work. All Subcontractors must submit their "Company Profile" page from the E-Verify system, proving registration in the E-Verify system. Subcontractor agrees to insert this clause in any and all applicable sub-subcontracts hereunder relating to performance of work under this contract

45. CODE OF BUSINESS ETHICS AND CONDUCT. Subcontractors and Sub-subcontractors shall comply with FAR Clause 52.203-13 Code of Business Ethics and Conduct in subcontracts that have a value in excess of $5,000,000 and a performance period of more than 120 days. The clause requires creating and communicating a code of ethics and conduct to employees engaged in the performance of this contract, as well as reporting any misconduct to the proper authorities. Subcontractor agrees to insert this clause in any and all applicable sub-subcontracts hereunder relating to performance of work under this contract.

46. EEO-1 REPORTING, VETS 4212 REPORTING (formerly VETS 100 or 100A), and AFFIRMATIVE ACTION.
**This contractor and subcontractor shall abide by the requirements of 41 CFR 60-1.4(a), 60-4.3(a), 60-300.5(a) and 60-741.5(a).** These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, disability or veteran status.

Subcontractors with contracts of $100,000 or more agree to file the VETS-4212 form annually (call 703/461-2460 for more information on this form or go to www.dol.gov/vets/programs/fcp/main.htm).

Written Affirmative Action Program and Standard Form 100 is required if the Subcontractor has 50 or more employees and federal or federally assisted contracts of $50,000 or more. Said program certifies (1) that subcontractor has or will develop a written Affirmative Action Program for each of its establishments in accordance with the regulations at 41 CFR Part 60-2; and (2) has filed the Standard Form 100 (EEO-1) annually. Contractor shall provide written notification to Deputy Assistant Secretary of Federal Compliance U.S. DOL within 10 working days following award of any construction subcontract in excess of $10,000 at any tier of work on this project. See Sample letter included in packet. For more information on this form go to www.eeoc.gov – US Equal Employment Opportunity Commission. Subcontractor agrees to insert this clause in any and all applicable sub-subcontracts hereunder relating to performance of work under this contract.

47. LABOR STANDARDS. Subcontractor shall be responsible to Contractor for ensuring that Subcontractor and its Sub-subcontractors fully comply with the Davis Bacon Act, Fair Labor Standards Act, Contract Work Hours and Safety Standards Act, the Copeland Act, and all federal wage and hour laws, including FAR Clauses 52.222-4 through 52.222-15. Subcontractor agrees to insert this clause in any and all applicable sub-subcontracts hereunder relating to performance of any of the Work required under this Subcontract.

**THIS SUBCONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

The Korte Company

DocuSigned by:

By: Susan D. Bowman Secr./Treasurer/CFO

(Signature) "Contractor"

SUBCONTRACTOR

MEC, Inc.

DocuSigned by:

By: Dale Brudi Owner

(Signature) "Subcontractor"

**Subcontract Attachment "A"**
**Article 16/The Work of this Subcontract:**

16.2 This Subcontract includes, but is not necessarily limited to the following:

16.2.1 Pertinent Federal, State, and local regulations and requirements are hereby made a part of this Subcontract. Requirements of authority having local jurisdiction shall supersede all other requirements.

Supplied by Korte

Supplied by Korte

MEC not hiring inspectors

16.2.2 Subcontractor shall obtain and pay for all necessary ~~permits~~ and licenses, and shall give all required notices, comply with all laws, rules and regulations bearing on the Work of this Subcontract. Subcontractor shall make arrangements for ~~permits and inspections~~, as required. Upon completion of the project, Subcontractor shall furnish to the Contractor, a certificate of approval from the ~~inspection authorities,~~ as required.

DWB 02/07/2025 11:46:37 AM

DS DB

16.2.3 Subcontractor shall submit one (1) set of reproducible ~~"Record Drawings"~~ and all closeout documents as required to the Owner and the Contractor at the completion of the project.

DS DB

~~What Drawings?~~

DWB

16.2.4 Subcontractor shall guarantee, in writing, that the Work of this Subcontract will comply with the Contract Documents, design criteria and function properly. Furthermore, subcontractor shall guarantee workmanship and materials for a minimum period of one (1) year or longer, if stipulated by the Contract Documents, from final acceptance by the Owner of the Work. Subcontractor shall furnish the necessary labor and materials, at no cost to the Owner and or Contractor, to replace any defective materials or workmanship during the guarantee period.

Remove

DS DB

DWB 02/07/2025 11:46:57 AM

16.2.5 ~~Prior to final payment, Subcontractor shall furnish all Operation and Maintenance Manuals (quantities as noted in the Contract Documents/RFP) and shall train Owner's personnel in the proper operation of the systems.~~

16.2.6 Cleanup work area and adjacent areas daily to remove any waste, trash and/or residue resulting from the Work of this Subcontract.

16.2.7 All work is subject to safety and quality control approval of the Contractor.

16.2.8 All labor, materials and equipment required for scaffolding and material handling that is related to the Work of this Subcontract.

16.2.9 All material deliveries, material handling, material storage and removal of excess materials as required, for the Work of this Subcontract.

Remove

DS DB

DWB 02/07/2025 11:47:03 AM

16.2.10 ~~All bracing and/or supports required for materials and equipment installed as a part of this Subcontract.~~

~~**16.2.11 Fire Stopping and Acoustical Caulking of penetrations through sound rated and fire rated assemblies resulting from the Work of this Subcontract.**~~

16.2.12 A qualified Subcontractor's representative shall attend the weekly or bi-monthly jobsite coordination meetings, or as required by the Contractor.

16.2.13 When change/extra work is performed, time sheets with the names of all of the Subcontractor's employees working on the change/extra work, along with supporting data for equipment rental charges and material costs, shall be submitted to the Contractor's site superintendent/representative on a daily basis for signature verification. Daily time sheets to include employee names, trade, classification, and hours worked (separating Subcontract work from change/extra work). Subcontractor to submit copies of all signed and verified work tickets, as supporting back-up, with their invoices for extra work.

Docusign Envelope ID: 184C94B2-B60C-404D-BF84-9DD9C4C6BD1C

16.2.14 Subcontractor shall employ skilled workers to perform the work. Work shall be done under the inspection and to the complete satisfaction of the Contractor. Subcontractor shall coordinate work with other subcontractors in order to avoid conflicts. Owner or Contractor will not share in any costs involved in changes required because of conflicts caused by failure to coordinate work with other Subcontractors.

16.2.15 Work shall be installed in accordance with the Contract Documents, local codes and governing bodies. Subcontractor shall bear all costs due to improperly installed work.

Remove DS DB DWB 02/07/2025 11:55:05 AM

16.2.16 ~~Subcontractor shall furnish all reports on testing of systems, as required, to the Owner and Contractor.~~

16.2.17 Certificate of Insurance naming The Korte Company and the Owner as additional insured before you begin work is required.

16.2.18 Provide hoisting for your own work.

16.2.19 Material/equipment prices provided as a part of the Subcontractors proposal shall be guaranteed for duration of the Subcontract, unless otherwise noted.

16.2.20 Subcontractor shall work with The Korte Company in an effort to meet the Small Business Subcontracting Plan goals outlined in the Contract Documents/RFP. Subcontractor will identify any material, equipment, and or systems that could be furnished and/or installed by a separate entity that fulfills the requirements of the identified Small Business Subcontracting goals for the project, with the understanding that the scope of work of this Subcontract could be reduced if it is determined that, in the best interest of the project, that this portion of the Work be subcontracted or purchased directly by The Korte Company.

16.2.21 Subcontractor shall provide daily progress reports identifying labor, material, and equipment utilized on the project. Additionally, report shall identify any lower tier contractors (sub-subcontractors).

16.2.22 If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work, the Subcontractor shall be deemed in default of this Subcontract Agreement after receipt of written notice, then the Contractor has the right to:

A. Supply workers and quantity of materials, equipment and other facilities as that Contractor deems necessary for the completion of the Subcontractor's work.

B. Withhold payment of any monies due the Subcontractor pending corrective action.

DS DB

16.2.23 Submittal Procedures – This Subcontractor shall submit within 10 days from the date of the Subcontract or Letter of Intent, a complete list of all material and equipment he proposes to use in the performance of the Work of this Subcontract.

Remove DWB 02/07/2025 11:56:30 AM

~~A. Shop Drawings – Unless otherwise required, submit ten (10) of opaque reproductions, which the Contractor requires, plus one copy for the Architect/Engineer.~~

Remove DWB 02/07/2025 11:56:32 AM

~~B. Product Data – Unless otherwise required submit ten (10) copies, which the Contractor requires, plus one copy for the Architect/Engineer.~~

DS DB

16.2.24 Drug Testing – All non-exempt employees are required to submit to testing on their first day of work.

16.2.25 Subcontractor is responsible for all applicable taxes including Federal, State, and Local.

Remove

16.2.26 ~~Perform all required layout for the Work of this Subcontract.~~

MEC did not include ~~Should this be removed?~~

16.2.27 ~~At the option of The Korte Company, this subcontractor may be asked to furnish a 100 percent Performance and Payment bond using the attached bond form. The cost for the premium will be paid by The Korte Company.~~

DWB 02/07/2025 11:57:12 AM

DS DB

16.2.28 Subcontractor shall be responsible for damages to the work of others and special care shall be exercised when working in areas of finished portions of the project.

16.2.29 Before commencement of the Work, a jobsite Preparatory Meeting is required. An Activity Hazard Analysis (AHA) is to be submitted to the Contractor's designated representative prior to scheduling the Preparatory Meeting.

16.2.30 Compliance with "The Korte Company Safety and Health/Drug Program", including but not limited to:

A. Orientation and pre-access procedures for all of Subcontractor employees.

B. Attendance by all of Subcontractor employees at Safety Training Meetings.

C. Development and maintenance of a Hazard Communication Program.

Remove

DWB 02/07/2025 11:58:13 AM

DS DB

~~D.~~ ~~Provision of all required tests for~~ all Subcontractors' employees to comply with Drug Free Workplace Programs.

16.2.31 Provide Safety Documents as required by Scope of Work to Korte prior to beginning any work onsite. At a minimum, Subcontractor will provide the following:

A. Competent Person Designation
B. Activity Hazard Analysis (AHA) / Job Safety Analysis (JSA)
C. Safety Data Sheets (SDS)
D. Other paperwork may include, but is not limited to:
1. Fall Protection Plan for Activities above 6'
2. Silica Control Plan

Remove 3 - 5

DS DB

~~3. Crane / Lifting Plan~~
~~4. Steel Erection Plan~~
~~5. Trenching Plan~~

DWB 02/07/2025 11:58:16 AM

16.2.32 The Owner Contract for this project may require the Subcontractor and any lower tier subcontractors to furnish documentation to verify their current Experience Modification Rate (EMR). If the Owner Contract establishes a maximum EMR threshold, any subcontractors EMR which is above that threshold will require a meeting with the Contracting Officer and the Contractor to explain how contractor and subcontractor(s) intend to maintain an accident-free work site.

16.2.33 The Subcontractor, as well as Subcontractor's lower tier contractors (sub-subcontractors), shall insure that all of their employees are in compliance with Federal, State, and Local statutes that provide them the rights to legally perform work in the United States of America.

16.2.34 With respect to Subcontractor change order pricing, the maximum markup percentage fee shall be fifteen percent (15%) for both overhead and profit on the net direct costs of:

A. Labor costs (costs equal to labor rates times hours worked) applicable to the change/extra work.

B. Cost of material and/or equipment incorporated into the change/extra work.

C. Rental cost of equipment and related fuel necessary to complete the change/extra work.

16.2.35 The maximum allowable Subcontractor markup percentage fee for change/extra work performed by a lower-tier contractor (Sub-subcontractor) shall not exceed five percent (5%) of the cost of the approved lower-tier contractor's change/extra work.

16.2.36 The maximum allowable markup percentage fees per 16.2.34 and 16.2.35 include the Subcontractor home/branch office expenses, project management (unless otherwise approved by the Contractor), general superintendent and general foreman (unless otherwise approved by the Contractor), estimating, engineering, coordination,

expediting, purchasing, detailing, legal, accounting, data processing, insurance, warranty expense, and other administrative expenses, safety, and small tools.

16.2.37 The markup percentages defined shall apply to additive and deductive changes. In the case of deductive changes, credit will be computed by applying the percentages in the same manner as an additive change. In those instances where a change involves both additive and deductive work, the additions and deductions will be netted and markup percentages applied to the net amount.

16.2.38 All overtime which is submitted to the Contractor for reimbursement must be approved by the Contractor in advance of its performance or it will be disallowed, and labor will be paid at the regular rate. Overtime premiums and or shift differential expenses, when authorized by the Contractor, will be reimbursed at the actual rate paid to the worker(s). If the Subcontractor or its lower tier contractors (Sub-subcontractors) are required to work overtime as a result of an inexcusable delay or other coordination problems, caused by the Subcontractor or its Sub-subcontractors, the overtime premium and or shift differential expense portion of the payroll expense and related labor burden costs will be considered as costs not to be reimbursed.

16.2.39 All Subcontractor Change Order/Requests for Change (RFC) submittals shall be itemized for the various components of work and segregated by labor, material and equipment, in a detailed format satisfactory to the Contractor. Details submitted shall include line-item estimates showing detailed material and labor take-offs, material prices by item and related labor hour pricing and extensions. Supporting back-up from second-tier contractors (sub-subcontractors) and material vendors shall also be provided.

16.2.40 The Contractor shall be entitled to audit any of the Subcontractor's Change Orders. If any such audit discloses overpricing or overcharges (of any nature) the Subcontractor shall reimburse the Contractor for any such overpricing and/or overcharging, within a reasonable amount of time, after presentation of the Contractor's finding to the Subcontractor. The Contractor may conduct such audits or inspections throughout the term of the Subcontract.

16.2.41 Labor Billing Rates to be used on this project for additional work will be as follows (applicable mark-up for profit and overhead, as noted in 16.2.34, is not included in the rates noted below):

Burdened Rates for WD CA20240020:

Demo Laborer:

| | | |
|---|---|---|
| A. | Straight Time Average Rate: | $72.62 /Hr. |
| B. | 1.5 X Overtime Average Rate: | $95.63/Hr. |
| C. | 2.0 X Overtime Average Rate: | $118.64/Hr. |

Excavator Operator:

| | | |
|---|---|---|
| A. | Straight Time Average Rate: | $126.30 /Hr. |
| B. | 1.5 X Overtime Average Rate: | $168.71/Hr. |
| C. | 2.0 X Overtime Average Rate: | $211.12/Hr. |

Backhoe Operator:

| | | |
|---|---|---|
| A. | Straight Time Average Rate: | $125.93 /Hr. |
| B. | 1.5 X Overtime Average Rate: | $168.16/Hr. |
| C. | 2.0 X Overtime Average Rate: | $210.39/Hr. |

| | | |
|---|---|---|
| Skid Steer Operator: | | |
| A. | Straight Time Average Rate: | $123.63 /Hr. |
| B. | 1.5 X Overtime Average Rate: | $164.71/Hr. |
| C. | 2.0 X Overtime Average Rate: | $205.78/Hr. |
| Asbestos Supervisor BEFORE 8/9/24: | | |
| A. | Straight Time Average Rate: | $89.76 /Hr. |
| B. | 1.5 X Overtime Average Rate: | $115.54/Hr. |
| C. | 2.0 X Overtime Average Rate: | $141.33/Hr. |
| Asbestos Laborer BEFORE 8/9/24: | | |
| A. | Straight Time Average Rate: | $82.17/Hr. |
| B. | 1.5 X Overtime Average Rate: | $107.95/Hr. |
| C. | 2.0 X Overtime Average Rate: | $133.74/Hr. |
| Lead Supervisor: | | |
| A. | Straight Time Average Rate: | $76.70/Hr. |
| B. | 1.5 X Overtime Average Rate: | $99.10/Hr. |
| C. | 2.0 X Overtime Average Rate: | $121.50/Hr. |
| Lead Laborer: | | |
| A. | Straight Time Average Rate: | $69.12/Hr. |
| B. | 1.5 X Overtime Average Rate: | $91.52/Hr. |
| C. | 2.0 X Overtime Average Rate: | $113.91/Hr. |
| Asbestos Supervisor AFTER 8/9/24: | | |
| A. | Straight Time Average Rate: | $98.30/Hr. |
| B. | 1.5 X Overtime Average Rate: | $127.14/Hr. |
| C. | 2.0 X Overtime Average Rate: | $155.98/Hr. |
| Asbestos Laborer AFTER 8/9/24: | | |
| A. | Straight Time Average Rate: | $90.71/Hr. |
| B. | 1.5 X Overtime Average Rate: | $119.55/Hr. |
| C. | 2.0 X Overtime Average Rate: | $148.39/Hr. |

16.2.42 Subcontractor shall provide a qualified full-time English speaking on-site job foreman able to communicate with The Korte Company's jobsite personnel and anyone directly or indirectly employed by the Subcontractor, for the duration of the Work of this Subcontract.

16.2.43 Compliance with the Davis Bacon Act (Prevailing Wage Rates) including the submittal of certified payrolls submitted electronically on a **weekly** basis (whether work was performed during that week or not), in accordance with the contract documents. Any additional cost required for the electronic certified payroll submissions shall be subcontractor's responsibility. Also, daily time sheets are to be submitted to the Contractor's Superintendent or designated representative.

DS DB

16.2.44 Form SF1413 – 'Statement and Acknowledgement' (per the Subcontract attachments) must be completed and returned with the Subcontract Agreement.

Remove ~~All property will be gone Prior to MEC work.~~

16.2.45 ~~Submission of 'Transfer and Acceptance of Military Real Property' Form 1354 before completion of work and before final payment, if required.~~

16.2.46 Request for Authorization of Additional Classification and Rate (per Subcontract attachments) must be completed and submitted to the Contractor promptly when any required work classification does not appear on the project's Wage Rate Determination.

DWB 02/07/2025 11:59:48 AM

16.2.47 Subcontractor acknowledges that Procore will be used as the designated document and project management platform throughout the life of the contract and commits to coordinating with the project team through the Procore platform. Procore is provided at no additional cost to Subcontractor and training resources are readily available. Subcontractor further agrees to that:

A. Drawing and Specifications will be posted to Procore. All document revisions will be issued to Subcontractor via Procore. Subcontractor is responsible for staying up to date with documents and coordinating changes with their field staff.
B. Submittals will be provided to the project team as dictated by the Procore submittal register. If Subcontractor is submitting multiple items in bulk, the submittal must be clearly annotated and/or bookmarked for the project team's review.
C. Requests for Information (RFI) will be posted by Korte to Procore. Responses to project RFI's will be distributed to Subcontractor via Procore. Subcontractor is responsible for all direction provided by distributed RFI responses.
D. Punch List items will be issued to the Subcontractor via Procore. Subcontractor is responsible for completing Punch List item and uploading comments and/or photos to each punch list item for corrected work.

16.2.48 Subcontractor acknowledges that GC Pay (a cloud-based pay application management site) will be used as the designated pay request platform. All pay requests, lien waivers, etc. will be required to be submitted within GC Pay. Visit www.gcpay.com for more information. GC Pay access is provided at no extra cost to the Subcontractor.

16.2.49 It is understood that the liquidated damages for the prime contract are assessed in the amount of 2,465.00/day for each calendar day of delay until the work is completed or accepted. Liquidated damages will be assessed against the Subcontractor in proportion to the subcontractor's share of the responsibility for such delay as described in Article 6.5 of the AGC 601 Federal Subcontract.

~~What Schedule?~~ 16.2.50 Contractor agrees to follow and provide manpower to comply with Korte Construction schedule.

16.2.51 Green Globes documentation will be provided and tracked per RFP and cost is included per Korte provided GBI - Green Globes Credits list.

16.2.52 All other provision as described in the RFP, and associated specification have been reviewed thoroughly, understood and included.

16.2.53 All products comply with specifications in the RFP either reference or include wholly or in part.

16.2.54 All betterments and options described in RFP have been included in this bid.

16.2.55 Compliance with "Korte Construction Safety and Health/Drug Program", including but not limited to:

a. Orientation and pre-access procedures for all of Subcontractor employees. Each employee is to watch the "I Know It Video" on their first day onsite.
b. Attendance by all onsite Subcontractor employees at Safety Training Meetings at the jobsite trailer is mandatory.

c. Development and maintenance of a Hazard Communication Program plan relevant to the jobsite conditions.

d. Project Safety and Drug Testing Program has been included. All on-site work personnel are to furnish TKC with appropriate drug test documentation prior to starting work on-site or take drug test at this contractor's expense. Cost of drug testing including as required time away from duties is included.

e. Subcontractor shall maintain onsite up-to-date MSDS sheets for all hazardous materials and chemicals that will be used during construction.

f. Compliance with Corps of Engineers EM-385-1-1 Safety Requirements (including providing all safety restraints needed for your work).

16.2.56 Subcontractor shall furnish all Operation and Maintenance Manuals and shall train Owner's personnel in the proper operation of the systems.

16.2.57 Subcontractor to unload and store all material and equipment used for duration of project.

DS DB

16.2.58 Subcontractor to clean up daily for their scope of work. Subcontractor to haul off all trash pertaining to this subcontractor's scope of work.

2 mobilizations only DWB 02/07/2025 12:04:56 PM

16.2.59 Subcontractor's scope of work includes multiple mobilizations to complete subcontractors' scope of work. 1 for Abatement, 1 for Demo

Remove. DS DB DWB 02/07/2025 12:04:59 PM

16.2.60 ~~Subcontractor is responsible for locating existing site utility locations and to fill out Dig-Permit information prior to start of subcontractor's scope of work. Any damage to existing utilities is at this subcontractor's expense to fix.~~

Remove

16.2.61 Includes all applicable ~~permits~~ and fees other than as listed in exclusions.

Remove

16.2.62 ~~Close out documents as specified included OMSI, O&M Manuals, and Record Drawings~~

Remove

16.2.63 Subcontractor is responsible for the ~~layout of own work~~.

DS DB

16.2.64 Subcontractor is responsible for fall protection, barricades, safety tap, etc. For his/her scope of work.

16.2.65 Drinking water is included in this contract.

DS DB

16.2.66 Materials pricing good for duration of project.

Remove DWB

16.2.67- ~~Provide temporary water for the complete jobsite (trades, trailers, etc.) for this contractor's scope of work. Includes utility company installation/permit fee.~~

16.2.68 Daily timesheets shall be submitted to The Korte Company's Jobsite Superintendent.

16.2.69 Comply with "Buy American" Act. All construction materials must be manufactured and purchased in the United States.

Remove DWB

16.2.70- ~~All permit/utility installation connection fees from utility companies with regards to site fire system water lines has been included in this proposal.~~

DS DB

16.2.71 Trips and expenses have been included in this proposal.

Remove

16.2.72 ~~Subcontractor is responsible for temporary utilities to complete his/her own scope of work.~~

DWB DS DB

16.2.73 Subcontractor to provide a Foreman to speak fluent English on jobsite at all times during their scope of work.

16.2.74 Subcontractor to provide identification and warranty tags for their work per RFP.

16.2.75 Demolition and Abatement of Building 1400 Scope of Work. Furnish all labor, equipment, and material for complete demolition per RFP, Plans and Specifications as required and in accordance with the Contract Documents, including, but not limited to:

16.2.75.1 It is a requirement that this project achieve "Compliant" certification level according to the Guiding Principles Validation (GPV) of the US Green Building Initiative (GBI) and the Green Building Certification Institute (GBCI) certification system. The GPV compliance with sustainable standards on this project are required by law. The requisite credits to achieve the compliance certification are set forth in the project specifications. The project has or will be registered with the GBI/GBCI for its formal submission, review and certification. The Subcontractor's GPV obligation, as it relates to the specific scope of this subcontract, includes but is not necessarily limited to the following:

A. Comply with and assist in maintaining the projects Construction Waste Management (CWM) and Indoor Air Quality (IAQ) Management Plans including but not limited to the following:

1. Removal and placement of trash and debris to designated areas and sorted in compliance with the CWM plan.

This can remain

2. No smoking and/or eating in the building, except in designated areas, Subcontractor employees failing to comply with this requirement will be asked to leave the jobsite.

3. Take all necessary steps to minimize dust generating activities in order to comply with the IAQ plan.

Remove DB

4. ~~Elevate off the ground and protect stored on-site materials from contamination and/or damage.~~

Remove DB

5. ~~Mask and protect installed absorptive materials from moisture damage.~~

6. Maintain clean work areas in order to control contaminates and prevent safety hazards.

B. Assisting in the commissioning of products and or systems including but not limited to:

Remove install and control?

1. Providing necessary submittal information, testing reports, ~~installation procedures, and control information.~~

Remove, no start ups DB

2. Attend commissioning meetings ~~and system startups~~.

Remove DB

3. ~~Providing required product and or system training.~~

C. Provide all necessary documentation required for the GPV certification submission including but not limited to:

Remove DB

~~1. Documentation of products and materials volatile organic compound content.~~

Remove?

~~2. Documentation of product and materials recycled material content.~~

Remove DB

~~3. Documentation of product and materials local and or regional material content.~~

Remove DB

~~4. Documentation of wood-based products and materials which are certified in accordance with the Forest Stewardship Council's (FSC) criteria.~~

Remove DB

~~5. Documentation of specific product and material cost breakdowns.~~

D. Comply with the project specification GPV submittal requirements. The required GPV documentation to accompany all submittal packages and shall be submitted with reasonable promptness as to cause no delay in the Work or the submission of the GPV Certification Application.

E. Subcontractor shall submit reports, at an interval agreed to by the parties, over the projects performance period to document the Subcontractors efforts in accomplishing its obligations towards meeting the projects GPV certification requirements.

F. Subcontractor shall assist in the preparation and submittal of the GPV Certification Application to the GBI, including required calculations and documentation for each GPV credit claimed and assists in the preparation of responses and additional documentation required as a result of comments or questions received from the GBI after review of the original submission for certification.

G. Contractor may backcharge Subcontractor for labor, materials, equipment, supervision and services rendered by the Contractor, including a reasonable mark-up, as required to insure Subcontractors compliance with the projects CWM and IAQ plans and compliance with the projects GPV certification requirements.

16.2.75.2 Furnish all labor, equipment, and materials for the following:

16.2.75.2.1 Abatement work on interior of Building.

16.2.75.2.2 Abatement work on exterior of building including sand blasting of CMU walls

16.2.75.2.3 Demolition of building and slab in its entirety.

16.2.75.2.4 Saw cutting required per plans and specifications.

16.2.75.2.5 Utility removal required per plans and specifications .

16.2.75.2.6 Backfill site to grade after demo.

16.2.75.2.7 Disposal and haul off of demolished and abated materials.

16.2.75.3 Miscellaneous - Furnish labor, equipment, and material for the following:

16.2.75.3.1 Owner Training

Remove DWB DS DB

16.2.75.3.2 ~~Survey/Layout for your work~~

only 2 mobilizations DWB DS DB

16.2.75.3.3 Multiple Mobilizations for your scope of work

16.2.75.3.4 Dust Control

Korte to get dig permit DWB 02/07/2025 2:53:48 PM

16.2.75.3.5 ~~Obtain Dig Permit~~ from Authority Having Jurisdiction (AHJ)

16.2.75.3.6 All grading to +/- .10 of an inch

Remove. DWB 02/07/2025 2:53:47 PM DS DB

16.2.75.3.7 ~~Dewatering as necessary~~

16.2.75.3.8 Restore existing properties to original conditions after utility work is completed.

Remove, MEC did not include in bid DWB 02/07/2025 2:53:45 PM DS DB

16.2.75.3.9 ~~Traffic Control for your work (includes but not limited to Barrels, Signs, Wooden Supports, Traffic Barriers, Flagmen, Traffic Control etc. per Authority Having Jurisdiction (AHJ)~~.

16.2.75.3.10 Spoils to be graded onsite .

16.2.75.3.11 Fall Protection/Safety Cabling/Tie Off Points as required by OSHA/EM 385.

16.2.75.4 Schedule - (IF Below Schedule is not met - penalty will be $2,465.00 per day in liquidated damages):

16.2.75.4.1 **Building Demolition:** 45 Working days DB

Need to add working days for Abatement work. Approx. 30 working days

16.2.76 Contract Determination:

16.2.76.1 Demolition and Abatement of Building 1400 Base Bid Amount: $1,351,666.24

**16.2.76.2 Total Contract Amount: $1,351,666.24**

16.2.77 Additional Pricing – Alternates (Subject to Contractor's approval, acceptance and incorporation into the Contract Sum at a later Date):

16.2.77.1 None

16.2.78 Additional Pricing – Unit Pricing:

16.2.78.1 ~~Building 1401 Electrical Demo:~~ - - ~~$ 3,336.62~~ Remove. Performed on different contract? DB

16.2.79 Specific Items of work excluded from this Subcontract are:

16.2.79.1

16.2.79.2

Special Provisions:

Any additional work performed must be approved by The Korte Company Superintendent prior to completion of work. Daily signed tickets for extra work performed will be required. Tickets shall be signed by the Project Superintendent.

## ATTACHMENT "B"
## FLIGHT TEST ENGINEERING LABORATORY COMPLEX – EDWARDS AFB, CA
## ENUMERATION OF CONTRACT DOCUMENTS

16.5 Enumeration of Contract Documents:

16.5.1 U.S. Army Corps of Engineers-Los Angeles District Contract Documents

16.5.1.1 Contract # W912PL21C0028 dated September 28, 2021. Request for Proposal W912PL21R0005; Project Title – DB Flight Test Engineering Lab. Complex with an issue date of May 4, 2021.
16.5.1.2 Amendment 0001, with an issue date of 05/13/2021.
16.5.1.3 Amendment 0002, with an issue date of 05/20/2021.
16.5.1.4 Amendment 0003, with an issue date of 06/01/2021.
16.5.1.5 Amendment 0004, with an issue date of 06/09/2021.
16.5.1.6 Amendment 0005, with an issue date of 08/03/2021.
16.5.1.7 Amendment 0006, with an issue date of 09/02/2021.
16.5.1.8 Amendment 0007, with an issue date of 09/08/2021.
16.5.1.9 Amendment 0008, with an issue date of 09/25/2021.

16.5.2 This Subcontract Agreement and all Attachments

16.5.3 Subcontract Amendment.

16.5.4 Korte Team Proposal and Responses:
Technical and Admin. Requirements Proposal dated 06/17/2021
Response to Discussion Items dated 08/16/2021
Revised Technical and Admin. Requirements Proposal dated 08/16/2021.
Final Technical and Admin. Requirements Proposal dated 09/13/2021.

16.5.5 Drawings and Specifications:

Pricing Documents:

Dated 11/02/2022 DP-1
Dated 10/14/2022 DP-2

16.5.6 Department of Labor Wage Determination (General Decision) Number CA20210020 Modification No. 13, dated 09/24//2021 – Building, Heavy and Highway, and CA20220020 - Building, Heavy and Highway dated 04/29/2022 applies to Building 1400 Demolition (Option 6)

**PLEASE NOTE: The applicable wage decision must be referenced on each payroll. (See Attachment)**

16.5.7 As required by the U.S. Army Corps of Engineers Contract, the following clauses are incorporated into this Subcontract by Reference, with the same force and affect as if they were given in full text:

16.5.7.1 All references to "Contractor" in the following incorporated clauses shall be in full force affect on Subcontractor. All clauses shall be incorporated in lower tier subcontracts.

| | |
|---|---|
| 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUN 2020) |
| 52.203-7 | ANTI-KICKBACK PROCEDURES (JUN 2020) |
| 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN TRANSACTIONS (JUN 2020) |
| 52.203-13 | CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT (JUN 2020) |
| 52.203-19 | PROHIBITION ON REQUIRING CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS OR STATEMENTS (JAN 2017) |
| 52.204-9 | PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (JAN 2011) |

| | |
|---|---|
| 52.204-10 | REPORTING EXECUTIVE COMPENSATION AND FIRST-TER SUBCONTRACT AWARDS (JUN 2020) |
| 52.204-21 | BASIC SAFEGUARDING OF COVERED CONTRACTOR INFORMATION SYSTEMS (JUN 2016) |
| 52.204-23 | PROHIBITION ON CONTRACTING FOR HARDWARE, SOFTWARE, AND SERVICES DEVELOPED OR PROVIDED BY KASPERSKY LAB AND OTHER COVERED ENTITIES (JUL 2018) |
| 52.204-25 | PROHIBITION ON CONTRACTING FOR CERTAIN TELECOMMUNICATIONS AND VIDEO SURVEILLANCE SERVICES OR EQUIPMENT (AUG 2020) |
| 52.209-6 | PROTECTING THE GOVERNMENTS INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (JUN 2020) |
| 52.211-15 | DEFENSE PRIORITY AND ALLOCATION REQUIREMENT (APR 2008) |
| 52.215-2 | AUDIT AND RECORDS – NEGOTIATION (JUN 2020) |
| 52.215-13 | SUBCONTRACTOR CERTIFIED COST OR PRICING DATA (JUN 2020) |
| 52.215-15 | PENSION ADJUSTMENTS AND ASSET REVERSIONS (OCT 2010) |
| 52.215-18 | REVERSION OR ADJUSTMENT OF PLANS FOR POSTRETIREMENT BENEFITS (PRB) OTHER THAN PENSIONS (JUL 2005) |
| 52.215-19 | NOTIFICATION OF OWNERSHIP CHANGES (OCT 1997) |
| 52.219-8 | UTILIZATION OF SMALL BUSINESS CONCERNS (OCT 2018) |
| 52.222-3 | CONVICT LABOR (JUN 2003) |
| 52.222-4 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT – OVERTIME COMPENSATION (MAY 2018) |
| 52.222-6 | CONSTRUCTION WAGE RATE REQUIREMENTS (AUG 2018) |
| 52.222-8 | PAYROLLS AND BASIC RECORDS (AUG 2018) |
| 52.222-9 | APPRENTICES AND TRAINEES (JUL 2005) |
| 52.222-10 | COMPLIANCE WITH COPELAND ACT REQUIREMENTS (FEB 1988) |
| 52.222-11 | SUBCONTRACTS (LABOR STANDARDS) (MAY 2014) |
| 52.222-12 | CONTRACT TERMINATION – DEBARMENT (MAY 2014) |
| 52.222.13 | COMPLIANCE WITH CONSTRUCTION WAGE REQUIREMENTS AND RELATED ACT REGULATIONS (MAY 2014) |
| 52.222-14 | DISPUTES CONCERNING LABOR STANDARDS (FEB 1988) |
| 52.222-15 | CERTIFICATION OF ELIGIBILITY (MAY 2014) |
| 52.222-21 | PROHIBITION OF SEGREGATED FACILITIES (APR 2015) |
| 52.222-26 | EQUAL OPPORTUNITY (SEP 2016) |
| 52.222-27 | AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (APR 2015) |
| 52.222-35 | EQUAL OPPORTUNITY FOR VETERANS (JUN 2020) |
| 52.222-36 | EQUAL OPPORTUNITY FOR WORKERS WITH DISABILITIES (JUN 2020) |
| 52.222-37 | EMPLOYMENT REPORTS ON VETERANS (JUN 2020) |
| 52.222-40 | NOTIFICATION OF EMPLOYEE RIGHTS UNDER THE NATIONAL LABOR RELATIONS ACT (DEC 2010) |
| 52.222-50 | COMBATING TRAFFICKING IN PERSONS (OCT 2020) |
| 52.222-54 | EMPLOYMENT ELIGIBILITY VERIFICATION (OCT 2015) |
| 52.222-55 | MINIMUM WAGES UNDER EXECUTIVE ORDER 13658 NOV 2020) |
| 52.222-62 | PAID SICK LEAVE UNDER EXECUTIVE ORDER 13706 (JAN 2017) |
| 52.223-2 | AFFIRMATIVE PROCUREMENT OF BIOBASED PRODUCTS UNDER SERVICE AND CONSTRUCTION CONTRACTS (SEP 2013) |
| 52.223-5 | POLLUTION PREVENTION AND RIGHT TO KNOW INFORMATION (MAY 2011) |
| 52.223-6 | DRUG-FREE WORKPLACE (MAY 2001) |
| 52.223-15 | ENERGY EFFICIENCY IN ENERGY-CONSUMING PRODUCTS (MAY 2020) |
| 52.223-18 | ENCOURAGING CONTRACTOR POLICIES TO BAN TEXT MESSAGING WHILE DRIVING (JUN 2020) |
| 52.225-11 | BUY AMERICAN ACT – CONSTRUCTION MATERIALS UNDER TRADE AGREEMENTS (JAN 2021) |
| 52.225-13 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (FEB 2021) |
| 52.227-1 | AUTHORIZATION AND CONSENT (JUNE 2020) |
| 52.227-4 | PATENT INDEMNITY -- CONSTRUCTION CONTRACTS (DEC 2007) |
| 52.227-11 | PATENT RIGHTS-OWNERSHIP BY THE CONTRACTOR (MAY 2014) |
| 52.228-5 | INSURANCE – WORK ON A GOVERNMENT INSTALLATION (JAN 1997) |
| 52.229-3 | FEDERAL, STATE AND LOCAL TAXES (FEB 2013) |
| 52.232.27 | PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (JAN 2017) |

| | |
|---|---|
| 52.236-9 | PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS (APR 1984) |
| 52.236-13 | ACCIDENT PREVENTION (NOV 1991) |
| 52.244-6 | SUBCONTRACTS FOR COMMERCIAL ITEMS (NOV 2020) |
| 52.248-3 | VALUE ENGINEERING – CONSTRUCTION (OCT 2020) |
| 252.203-7001 | PROHIBITION ON PERSONS CONVICTED OF FRAUD OR OTHER DEFENSE-CONTRACT-RELATED FELONIES (DEC 2008) |
| 252.203-7002 | REQUIREMENTS TO INFORM EMPLOYEES OF WHISTLEBLOWER RIGHTS (SEP 2013) |
| 252.203-7004 | DISPLAY OF HOTLINE POSTERS (AUG 2019) |
| 252.204-7000 | DISCLOSURE OF INFORMATION (OCT 2016) |
| 252.204-7004 | ANTITERRORISM AWARENESS TRAINING FOR CONTRACTORS (FEB 2019) |
| 252.204-7020 | NIST SP 800-171 DOD ASSESSMENT REQUIREMENTS (NOV 2020) |
| 252.205-7012 | SAFEGUARDING COVERED DEFENSE INFORMATION AND CYBER INCIDENT REPORTING (DEC 2019) |
| 252.209-7004 | SUBCONTRACTING WITH FIRMS THAT ARE OWNED OR CONTROLLED BY THE GOVERNMENT OF A COUNTRY THAT IS A STATE SPONSOR OF TERRORISM (MAY 2019) |
| 252.223-7006 | PROHIBITION ON STORAGE, TREATMENT, & DISPOSAL OF TOXIC & HAZARDOUS MATERIALS (SEP 2014) |
| 252.225-7048 | EXPORT-CONTROLLED ITEMS (JUN 2013) |
| 252.225-7052 | RESTRICTION ON THE ACQUISITION OF CERTAIN MAGNETS, TANTALUM, & TUNGSTEN (OCT 2020) |
| 252.227-7037 | VALIDATION OF RESTRICTIVE MARKINGS ON TECHNICAL DATA (SEP 2016) |
| 252.236-7013 | REQUIREMENTS FOR COMPETITION OPPORTUNITY FOR AMERICAN STEEL PRODUCERS, FABRICATORS, AND MANUFACTURERS (JUN 2013) |

Full text of clauses may be accessed electronically at https://www.acquisition.gov/browse/index/far

END OF ATTACHMENT "B"

**Exhibit C**

Change Order Requests

MEC, Inc.

**PROJECT:** EAFB Bldg 1400 Additional Roof System Removal

**FACILITY:** EAFB Bldg 1400

**CUSTOMER:** Korte Company

Date: 7/18/25

MEC Proposal # 241-249

Rev # 1

**GC #**

| Demolition / Environmental Remediation<br>4919 Contractor Rd, (PO Box 278)<br>Edwards AFB, CA 93523 | LABOR (Burdened) | | | | MATERIALS | | | | EQUIPMENT | | | | SUBCONTRACTOR/Disposal | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ST/OT/DT Unit | Qnty | Unit Rate | Total Labor | Unit | Qnty | Unit Rate | Total Mat. | Unit | Qnty | Unit Rate | Total Equip. | Unit | Qnty | Unit Rate | Total Cost |
| **Labor** | ST | | | | | | | | | | | | | | | |
| Project Management | Hr. | 84 | $85.00 | $7,140.00 | | | | | | | | | | | | |
| Abatement Supervisor | Hr. | 105 | $77.69 | $8,157.45 | | | | | | | | | | | | |
| Abatement Laborer | Hr. | 1015 | $73.64 | $74,744.60 | | | | | | | | | | | | |
| Demo Supervisor | Hr. | 105 | $75.24 | $7,900.20 | | | | | | | | | | | | |
| Demo Laborer | Hr. | 1015 | $68.92 | $69,953.80 | | | | | | | | | | | | |
| Fork Reach Operator | Hr. | 187.5 | $97.43 | $18,268.13 | | | | | | | | | | | | |
| **Materials** | | | | | | | | | | | | | | | | |
| PPE (asbestos required items) | | | | | Day | 27 | $127.00 | $3,429.00 | | | | | | | | |
| Poly Sheeting, tape and ACM stickers, glue | | | | | Day | 27 | $216.00 | $5,832.00 | | | | | | | | |
| Fuel | | | | | Week | 6 | $350.00 | $2,100.00 | | | | | | | | |
| **Equipment** | | | | | | | | | | | | | | | | |
| Crew Vehicle | | | | | | | | | Day | 54 | $181.00 | $9,774.00 | | | | |
| Fork Reach | | | | | | | | | Mo. | 2 | $6,400.00 | $12,800.00 | | | | |
| Dump Bucket | | | | | | | | | Mo. | 2 | $625.00 | $1,250.00 | | | | |
| Drop Off and Pickup | | | | | | | | | Ea. | 2 | $365.00 | $730.00 | | | | |
| Personal Pumps (2 a day) | | | | | | | | | Day | 42 | $18.00 | $756.00 | | | | |
| Personal Air Samples(25% of crew 3 a day) | | | | | | | | | Day | 126 | $30.00 | $3,780.00 | | | | |
| Generator | | | | | | | | | Mo. | 2 | $2,200.00 | $4,400.00 | | | | |
| Power Tools | | | | | | | | | Day | 27 | $145.00 | $3,915.00 | | | | |
| Hand Tools | | | | | | | | | Day | 27 | $84.00 | $2,268.00 | | | | |
| **Sub Costs/Disposal** | | | | | | | | | | | | | | | | |
| Temp Fencing | | | | | | | | | | | | | Mo. | 1 | $1,200.00 | $1,200.00 |
| Bin Rentals (8 bins) | | | | | | | | | | | | | Day | 27 | $22.50 | $607.50 |
| Sampling (Suspect Materials) | | | | | | | | | | | | | Ea. | 1 | $4,500.00 | $4,500.00 |
| Submittals | | | | | | | | | | | | | Ea. | 3 | $580.00 | $1,740.00 |
| Transportation (ACM Disposal) | | | | | | | | | | | | | Ea. | 36 | $1,617.00 | $58,212.00 |
| Asbestos Disposal | | | | | | | | | | | | | Ea. | 36 | $890.00 | $32,040.00 |
| Lodging/Travel | | | | | | | | | | | | | LS | 27 | $593.00 | $16,011.00 |
| TOTAL: | | | | $186,164.18 | | | | $11,361.00 | | | | $39,673.00 | | | | $ 114,310.50 |

| | | |
|---|---|---|
| SUB TOTAL COST: | $ | 351,508.68 |
| Overhead & Profit 15% | $ | 52,726.30 |
| **GRAND TOTAL:** | **$** | **404,234.98** |

**SCOPE OF WORK: Perform removal of the top side roof system by hand (originally bid to perform demo with an excavator). Disposal included in original bid.**

**- Remove and dispose of second unforeseen roof system by hand. (asbestos abatement and disposal).**

MEC, Inc.

**PROJECT:** EAFB Bldg 1400 Roofing Plywood Install for Safety

**FACILITY:** EAFB Bldg 1400

**CUSTOMER:** Korte Company

Date: 7/18/25

MEC Proposal # 241-249

Rev # 1

**GC #**

| Demolition / Environmental Remediation<br>4919 Contractor Rd, (PO Box 278)<br>Edwards AFB, CA 93523 | LABOR (Burdened) | | | | MATERIALS | | | | EQUIPMENT | | | | SUBCONTRACTOR/Disposal | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ST/OT/DT Unit | Qnty | Unit Rate | Total Labor | Unit | Qnty | Unit Rate | Total Mat. | Unit | Qnty | Unit Rate | Total Equip. | Unit | Qnty | Unit Rate | Total Cost |
| **Labor** | **ST** | | | | | | | | | | | | | | | |
| Project Management | Hr. | 26 | $77.69 | $2,019.94 | | | | | | | | | | | | |
| Abatement Supervisor | Hr. | 93 | $77.69 | $7,225.17 | | | | | | | | | | | | |
| Abatement Laborer | Hr. | 1213 | $73.64 | $89,325.32 | | | | | | | | | | | | |
| Fork Reach Operator | Hr. | 177 | $97.43 | $17,245.11 | | | | | | | | | | | | |
| **Materials** | | | | | | | | | | | | | | | | |
| PPE (asbestos required items) | | | | | Day | 16 | $127.00 | $2,032.00 | | | | | | | | |
| Fuel | | | | | Week | 3 | $350.00 | $1,050.00 | | | | | | | | |
| **Equipment** | | | | | | | | | | | | | | | | |
| Crew Vehicle | | | | | | | | | Day | 32 | $181.00 | $5,792.00 | | | | |
| Fork Reach | | | | | | | | | Mo. | 1 | $6,400.00 | $6,400.00 | | | | |
| Dump Bucket | | | | | | | | | Mo. | 1 | $625.00 | $625.00 | | | | |
| Personal Pumps (2 a day) | | | | | | | | | Day | 32 | $18.00 | $576.00 | | | | |
| Personal Air Samples(25% of crew 3 a day) | | | | | | | | | Day | 63 | $30.00 | $1,890.00 | | | | |
| Generator | | | | | | | | | Mo. | 1 | $2,200.00 | $2,200.00 | | | | |
| Power Tools | | | | | | | | | Mo. | 1 | $145.00 | $145.00 | | | | |
| **Sub Costs/Disposal** | | | | | | | | | | | | | | | | |
| Temp Fencing | | | | | | | | | | | | | Mo. | 1 | $1,200.00 | $1,200.00 |
| Bin Rentals (3 bins) 15 Days | | | | | | | | | | | | | Day | 45 | $22.50 | $1,012.50 |
| Plywood | | | | | | | | | | | | | LS. | 1 | $1,960.00 | $1,960.00 |
| Submittals | | | | | | | | | | | | | Ea. | 1 | $580.00 | $580.00 |
| Plywood Installtion Materials | | | | | | | | | | | | | Ea. | 1 | $517.00 | $517.00 |
| Lodging/Travel | | | | | | | | | | | | | LS | 16 | $593.00 | $9,488.00 |
| **TOTAL:** | | | | **$115,815.54** | | | | **$3,082.00** | | | | **$17,628.00** | | | | **$ 14,757.50** |

| | | |
|---|---|---|
| SUB TOTAL COST: | $ | 151,283.04 |
| Overhead & Profit 15% | $ | 22,692.46 |
| **GRAND TOTAL:** | **$** | **173,975.50** |

**SCOPE OF WORK: Provide and place plywood sheeting throughout the roof system to ensure the deck is safe to be worked on while the bottom asbestos layer is being removed and detailed.**